## INSURANCE COMPANY *v.* FOLEY.

1. When sued upon a life policy, the company set up that in applying for it the insured did not make true answers to questions touching his habits. The evidence in regard to them was conflicting. The court refused to charge the jury that when " witnesses testify, from their own knowledge of the party and his habits, that he was not of temperate habits, their testimony 'is entitled to greater consideration by a jury than witnesses who testify otherwise, because they have not seen or known of such habits as are testified to by those who declare that he was not a person of temperate habits." *Held*, that the refusal was proper.

2. If the habits of the insured in the usual, ordinary, and every-day routine of his life were temperate, his representations that he was and always had been a man of temperate habits were not untrue, within the meaning of the policy, although he may have had an attack of *delirium tremens* from an exceptional over-indulgence.

ERROR to the Circuit Court of the United States for the District of South Carolina.

In January, 1872, Foley obtained from the Knickerbocker Life Insurance Company of the city of New York a policy of insurance for $5,000, on the life of one Badenhop, his debtor to that amount. The premium required at the time and the stipulated annual premiums were paid. The profits arising upon them entitled the assured, in May, 1873, to a further insurance on the life of his debtor, to the amount of $36.03;

and in June, 1874, to the amount of $39.36; and policies for these sums were issued to him.

Badenhop died in January, 1875; but the assured, being ignorant of the fact, paid the next annual premium.   The present action, to recover the amount of the policies and of the premium overpaid, with interest, was commenced in a court of the State, and, upon application of the company, removed to the Circuit Court of the United States.   The complaint alleges the issue of the policies, the interest in them of the plaintiff, the death of Badenhop, the proof thereof furnished to the company, the fulfilment by the plaintiff and the deceased of "all the conditions" of the policies, the amount due, and its non-payment.   It also alleges the payment of the annual premium after the death of the insured.   A copy of the policies is annexed to the complaint.   The first policy declares that it is issued upon the express condition that the application on file in the office of the company is an express warranty of the truth of the answers and statements contained in it, and that, if they are in any respect untrue, the policy is to be void and of no effect to any one.   The additional policies declare that they are subject to the same conditions as the first.

In its answer the company sets up, among other things, as a defence, that the plaintiff and the insured did not make true and correct answers and statements to certain questions contained in the application for the first policy, in this, that to the questions, "Is the party of temperate habits?   Has he always been so?" the answers given were "Yes," — when, in fact, he was a man of intemperate habits, thus concealing by the answer his true habits, and making a false statement concerning them; whereby the policy became void.

On the point thus raised, whether the answers given as to the habits of the insured were true or false, the testimony offered was conflicting.   On the part of the company, one witness testified that in 1871 and in the early part of 1872 he was the family physician of Badenhop; that at that time Badenhop was drinking hard; that during that year he had attended him for *delirium tremens*, and once or twice for indisposition, produced, "as he thought," from the excessive use of intoxicating drink; and that he "regarded" him as a man of

intemperate habits. But, on his cross-examination, he admitted that he did not know Badenhop intimately, had no relations with him other than professional, and saw him only when he attended him professionally, or met him occasionally in the street. Two other witnesses testified for the company,—one, that he was intimate with Badenhop; the other, that he had known him for several years, and that he was a very intemperate man; that they had frequently seen him under the influence of liquor; but neither of them stated when his acquaintance commenced, whether before or after the policy was issued.

On the part of the plaintiff several witnesses were called, who had known Badenhop intimately for many years, their acquaintance with him commencing before the policy was issued and continuing afterwards, and one of whom had been his partner in 1869 and 1870; and they all testified unqualifiedly to his being a man of temperate habits.

The defendant requested the court, among other things, to instruct the jury, " That where, in a question whether the party assured is one of temperate habits at the time when he seeks to be insured, and has always been so, witnesses testify, from their own knowledge of the party and his habits, that he was not of temperate habits, their testimony is entitled to greater consideration by a jury than witnesses who testify otherwise, because they have not seen or known of such habits as are testified to by those who declare that he was not a person of temperate habits."

This instruction the court refused to give, and an exception was taken. The court, among other things, instructed the jury that all the representations in the application for the policy of insurance are warranties that such representations are true, and that if they find from the evidence that the habits of the insured, at the time of, or at any time prior to the application, were not temperate, then the answers made by him to the questions, " Are you a man of temperate habits?" " Have you always been so?" were untrue, and the policy is void; but that if they find that his habits in the usual, ordinary, and every-day routine of his life were temperate, then such representations were not untrue within the meaning of

the policy, although they may find that he had an attack of *delirium tremens* resulting from an exceptional indulgence in drink prior to the issue of the policy; and that the burden of proof is upon the defendant to show the breach of any warranty in the policy. To the charge the defendant excepted. The jury found for the plaintiff, and, upon the verdict, judgment was entered; to review which the case is brought to this court on a writ of error.

*Mr. A. G. Magrath* for the plaintiff in error.

*Mr. J. P. K. Bryan* for the defendant in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The instruction requested by the defendant, treating it as applicable to the case at bar, and not as containing a mere abstract proposition of law, is open to several objections.

In the first place, it assumes that there was a difference in the sources of knowledge of the witnesses in the case; which was not the fact. All of them testified from their observation of the conduct of the deceased; and the jury would properly give weight to the testimony, not according to the positiveness of the averments of the witnesses as to their knowledge, but, other considerations being equal, according to their opportunities of observation of the deceased's conduct, and the manner in which those opportunities had been improved. No witness testified, from his own knowledge, that the deceased was of intemperate habits at the time he applied for the insurance, and that he had always been so. No instruction should be given which thus assumes, as a matter of fact, that which is not conceded or established by uncontradicted proof. *New Jersey Mutual Life Insurance Co.* v. *Baker*, 94 U. S. 610.

In the second place, the instruction requested does not present the law with entire accuracy. Whether the testimony of the persons alleging knowledge is entitled to greater consideration than that of persons asserting opinions, mainly depends upon the subjects with respect to which the testimony is given. If the subject be, as in this case, the habits of a party, affirmations of knowledge will be weighed with reference to the opportunities of the witnesses to obtain the knowledge they

assert. If they are not intimate with him, and see him only occasionally, the assertion of knowledge of his habits, however strong, will amount to no more than the assertion of an opinion, and will not be entitled to equal weight with less positive testimony of other witnesses founded upon a more extended acquaintance.

In the third place, the instruction requested omits the consideration of the character of the witnesses, as an element in determining the weight to be given to their testimony. The force of testimony often depends as much upon the intelligence and judgment of the witnesses, disclosed by their manner of testifying, as upon confidence in their general veracity.

The charge given by the court, as stated above, correctly presented the law of the case. The question was as to the habits of the insured. His occasional use of intoxicating liquors did not render him a man of intemperate habits, nor would an exceptional case of excess justify the application of this character to him. An attack of *delirium tremens* may sometimes follow a single excessive indulgence. Ray, in his treatise on Medical Jurisprudence, says, that, though it most commonly occurs in habitual drinkers, after a few days of total abstinence from spirituous liquors, it may be the immediate effect of an excess or series of excesses in those who are not habitually intemperate as well as in those who are. Sect. 545. In the American Encyclopædia, under the head of "Delirium Tremens," it is stated that it "sometimes makes its appearance in consequence of a single debauch;" though commonly it is the result of protracted or long-continued intemperance. Vol. v. p. 782.

When we speak of the habits of a person, we refer to his customary conduct, to pursue which he has acquired a tendency, from frequent repetition of the same acts. It would be incorrect to say that a man has a habit of anything from a single act. A habit of early rising, for example, could not be affirmed of one because he was once seen on the streets in the morning before the sun had risen; nor could intemperate habits be imputed to him because his appearance and actions on that occasion might indicate a night of excessive indulgence. The court did not, therefore, err in instructing the jury that if

the habits of the insured, " in the usual, ordinary, and every-day routine of his life, were temperate," the representations made are not untrue, within the meaning of the policy, although he may have had an attack of *delirium tremens* from an exceptional over-indulgence. It could not have been contemplated from the language used in the policy that it should become void for an occasional excess by the insured, but only when such excess had by frequent repetitions become a habit. And the testimony of the witnesses, who had been intimate with him for years, and knew his general habits, may well have satisfied the jury that, whatever excesses he may at times have committed, he was not habitually intemperate.

*Judgment affirmed*