### DAVEY *v.* ÆTNA LIFE INS. CO.

*(Circuit Court, D. New Jersey. January, 1884.)*

1. LIFE INSURANCE—UNTRUE ANSWER—USE OF INTOXICATING LIQUORS.

    An untrue answer to a question in the application regarding the use of intoxicating liquors will avoid the policy, where the application is part of the contract.

2. SAME—IMPAIRMENT OF HEALTH—USE OF STIMULANTS—PHYSICIAN'S CERTIFICATE.

    The policy provides that if the insured should become so far intemperate as to impair his health, it should be void. The attending physician certified that he was in the habit of using stimulants and tobacco, and probably they impaired his health. *Held,* that while the certificate must not be taken as evidence of the truth of the fact stated, it is a suggestion entitled to weight in considering the justification of resistance by the company.

3. SAME—BREACH OF WARRANTY.

    A substantially untrue answer, where the application is part of the policy, is a breach of warranty which avoids the policy. It is of no consequence whether the question be material or not.

4. SAME—INTEMPERANCE—DELIRIUM TREMENS.

    The condition that if the insured should become so far intemperate as to impair his health, the policy would be void, is a condition subsequent whose breach involves a forfeiture. *Delirium tremens* from intemperance would amount to a forfeiture.

5. SAME—IMPAIRMENT OF HEALTH.

    Impairment of health is to be taken in its ordinary sense, and need not be permanent. Habitual intemperance is not necessary, so long as his health is impaired.

6. SAME —DEATH CAUSED WHOLLY OR PARTLY FROM INTOXICATING LIQUORS.
      I death resulted wholly or partly from the use of intoxicating liquors, the
  pol cy is void.

At law.

*John Linn,* for plaintiff.

*Theron G. Strong,* for defendant; *A. Q. Keasbey,* of counsel.

McKENNAN, J., (*charging jury.*)  On the sixteenth of July, 1878, William A. Davey entered into a contract with the Ætna Life Insurance Company, of Hartford, Connecticut, whereby, in consideration of the annual payment of $233.60, to be paid on or before the sixteentl day of July in each year during his life, the Ætna Life Insurance Company stipulated to pay to Ada Davey, within 90 days after notice of the death of William A. Davey, the sum of $10,000.   The first premium of $233 was accordingly paid it, on or before the execution of the policy; the three subsequent premiums were paid at the time when they severally became due.   On the sixth of August, 1881, William A. Davey died, and on the sixteenth of August what are called proof of death, dated on the thirteenth of August, 1881, were delivere 1 to the Ætna Life Insurance Company.   Thereupon the plaintiff in th s case, and beneficiary under this policy, claimed that the insurance company was bound to pay her the amount stated in the policy, the sum of $10,000, with interest after 90 days from the day of service of notice of Mr. Davey's death,—about the sixteenth of November.   These facts were proved by the plaintiff, and, indeed, there is no contest between the parties as to the proof thereof; and there ore, apparently, the plaintiff is entitled to recover the amount of this policy unless some sufficient reason is shown by the defendant why t should not be required to pay that amount.   The right of the plaintiff to the amount, and the liability or obligation of the defendant to pay the amount stated in the policy, are dependent upon certain clauses and stipulations and conditions of this policy, the breach or violation of which are alleged by the defendant as the reason why it is not liable to pay the same.   Accompanying the policy, and as part of it, is what is called an application, which contains answers to numerous questions and statements of facts, which the parties have agreed and stipulated shall be regarded as part of the contract, and to the absolute truth of which the insured bound himself.   So that every statement of fact contained in this application the insured made himself responsible for the absolute truth of, no matter whether there was any inadvertent or unintentional mistake.

It is alleged in the first place by the defendant that an answer of William A. Davey to a question found in this application was untrue, and therefore, by the express terms of the contract, it was absolved from any liability to pay anything on this policy.   That question is as follows: "Has the party ever been addicted to the excessive or intemperate use of any alcoholic stimulants or opium, or does he use any of them often or daily?"   The answer to that is "No," which im-

parted the information that he has never been addicted to the excessive use of any alcoholic liquor or opium, and that he did not then, at the time of the answering of this question, habitually use any of them often or daily. You will observe, gentlemen of the jury, that this relates to the condition of things existing at the time of the execution or signing of this application, July 16, 1878. It relates to the habits and course of life of William A. Davey at that time. He is bound by his contract to make a truthful answer to that question, and if it is in any sense untrue, the contract between him and the insurance company was void, and cannot be the basis of any claim for the amount stated in the policy. You will consider the evidence which has been produced here by the defendant to support the allegation made that the answer is untrue. I do not intend to advert to it in detail, or more than in the most general way, but simply to say to you that you must be satisfied, from the evidence produced by the defendant before you, (because the burden is upon the defendant,) that at the time when this question was answered by Mr. Davey he either had been addicted to the excessive or intemperate use of alcoholic stimulants or opium, or that he was at that time in the habit of the frequent or daily use of it. If you are so satisfied, why then the answer was untrue, the contract void, and the plaintiff is not entitled to recover the amount of this policy.

The second ground of the defense is that this policy, on its face, is made subject to a number of conditions. They are recited in detail in the third clause of the policy. Among them is the condition that if he (William A. Davey) shall become so far intemperate as to impair his health, or induce *delirium tremens*, the company shall be absolved from any liability to pay the amount agreed to be paid by this policy of insurance. This, you will observe, gentlemen, relates to the habits and course of life of the insured after the delivery of this policy. In effect he agrees that he will pursue a temperate course of life, or at least will not indulge so far in the use of alcoholic liquor as to impair his health or induce *delirium tremens*, and in case he does, why the contract between him and the company is void. And this, gentlemen, you will perhaps regard as the most serious inquiry imposed upon you under the testimony in this case. In the first place it is incumbent upon the beneficiary under this policy of insurance, Mrs. Davey, to give notice of the death of her husband; to inform the company of the cause of his death; to supply it with a certificate of a physician having knowledge of the cause of the death, so that the company may have full information touching not only the fact but the circumstances of the death of the insured, that they may make such inquiry as might be deemed proper by them under the circumstances to ascertain the truth of the facts surrounding the death of the insured.

Now, in this case, that duty was complied with by the plaintiff, and in due time a physician's certificate of the death of William A.

Davey was furnished to the company. The physician who gave that certificate was William A. Rae, who was stated in the certificate to have b en a regular physician by profession, and that as such physician he attended William A. Davey in his last illness, and was called to atte d him on or about the fourth of August, and continued to attend him until about the time of his death, which occurred on the sixth of August, 1881. This, gentlemen, was not only a regular physician, but he stood in very close relations to the insured. He was his ati nding physician. Presumably he had knowledge of the cause of his death. He certainly was familiar with the circumstance of his de th. Now, in this certificate he is asked to say what occasioned the la t illness of the insured; or, to give the question in its exact words, "Was his last illness occasioned, or had his general health been i npaired, by any pernicious habits?" The answer to that question i : "He was in the habit of using stimulants and a great deal of tobacco; probably they impaired his health." Now there is at least a sugg estive inference that the habit and use of stimulants had something to do with the cause of this man's death. Although, as you have heard through the progress of this trial, this certificate is not to be tal en as evidence of the truth of the fact stated here, it is proper to be taken into consideration by this company, to whom it must be furni hed for their consideration in ascertaining the truth touching the ci rcumstances of the death of the insured; and here is a suggestion which is certainly entitled to weight, in so far as it may afford a full a nd complete justification of the course this company has taken in m king inquiry as to the cause of death, and in insisting that its liabil ty, in view of the information gathered, shall be determined by the i roper tribunal. We say, therefore, that there is no ground what ver for any reflection upon the course taken by this company in re isting the demand of the plaintiff for the amount of this policy, but i has properly come here before a jury of the country to submit to it such evidence as it has been able to gather, in view of the intimation given by the family physician of the deceased,—to submit to a jui y such information as it could gather touching the circumstances of th death of this man, in order that an impartial jury may be able to de cide betwen these parties whether the insured has committed a viola tion of the contract which he stipulated to observe and keep. And in this connection you have the testimony of Dr. Rae in the cour before you, in which he substantially reaffirms what he said in tl e certificate. Although he says that he was not certain, and coul l not be as to the cause of this man's death, yet in view of the doul t, because there was no autopsy, no *post mortem* examination, yet he stated he entertained the impressions which are stated in the cert ficate of death which he furnished to the company. And you hav testimony produced here by witnesses called on behalf of the com any to testify as to the habits and course of life of Mr. Davey, prin ipally at Alexandria bay, during a number of years that he was

in the habit of visiting there. You have also the testimony of physicians who were present at his death, one of them, (who was not full-fledged at the time, but graduated afterwards,) Dr. Bruce, who detailed to you what he saw in the last illness of Mr. Davey. He was present in the room and waited upon him, and you have his opinion as the cause of his death. You also have the opinion of Dr. Watson, who seems to be a very candid and fair and intelligent physician. He details to you fully the symptoms he observed in the case of this man, and what occurred in the course of the visits he made to him in the last days of his life, and you have his opinion also as to the cause of his death. You have also the testimony of a number of witnesses, covering a period of about seven or eight years, who were with Mr. Davey in his visits at Alexandria bay, and who told you what they saw of his habits in the latter part of his life. Now, all this is produced by the defendant to satisfy you that Mr. Davey committed a breach of the condition referred to in the third clause of this policy, and a violation of which he stipulated should be attended by a forfeiture of this contract. On the other hand, you have rebuttal testimony produced by the plaintiff as to the habits and course of life and condition of health of Mr. Davey for a period of seven, eight, ten, or fifteen years before his death. That is furnished by the family relations of Mr. Davey, and by those who were accustomed to see him frequently, and who say they are familiar with his habits of life. All this must be taken into consideration by you, gentlemen of the jury, and from it all you must deduce your conscientious conclusions as to the fact which is established. Does it satisfy you, taking it altogether, that Mr. Davey, after the date of this policy, had become so far intemperate as to impair his health, and indulge in the use of alcoholic liquors to such an extent as to impair his health or induce *delirium tremens?* If it does so satisfy you, the defendant has made out his case; if it fails to convince you, why the plaintiff is entitled to recover the amount of this policy.

Now, gentlemen, it remains only to explain to you the meaning of this condition in the policy of insurance, and that I can do by simply reading what I have written here in answer to the prayer of instructions presented by counsel:

"(1) By the terms of the policy in this case, the application therein mentioned is made part of it; the answers in the application are warranties, and if any answer is untrue the warranty is broken and the policy is void."

I substantially affirm that point in what I have already stated.

"(2) The agreement of the parties that the statements in the application are true, and their falsity in any respect should avoid the policy, removes the question of their materiality from the consideration of the court and jury, or either of them."

I substantially affirm that.

"(3) If the jury believe that the answer to question No. 6 in the application for insurance, as to whether the party had ever been addicted to the

excessive or intemperate use of any alcoholic stimulant or opium, or whether he uses any of them often or daily, was false or untrue, the policy issued upon the application is void, and their verdict must be for the defendant."

That is affirmed.

"(4) The condition of the policy to the effect that if William A. Davey shall become so far intemperate as to impair his health, or induce *delirium tremens*, etc., is a condition subsequent, and the breach of it renders the policy null and void, as provided in the eighth section thereof."

That is affirmed.

"(5) If the jury find that the insured became so far intemperate as to impair his health, the policy became null and void except as provided in the eighth section."

That is affirmed.

"(6) If the jury find that the insured became so far intemperate as to induce *delirium tremens*, the policy became null and void, subject to the eighth section thereof."

That is also affirmed.

"(7) The words 'impair his health' are to be taken in their ordinary meaning, and mean simply impair his health."

That is also affirmed.

"(8) The impairment of health referred to need not be a permanent impairment of health in order to avoid the policy."

The impairment of health contemplated by this condition of the policy is not necessarily permanent or irremediable, nor is it the temporary indisposition or disturbance usually resulting from a drunken debauch, but it is the development of disease, or the impairment of constitutional vigor, by the use of intoxicating beverages in such a degree and for such a time as is ordinarily understood to constitute intemperance.

"(9) The expression in the policy, 'became so far intemperate as to impair his health,' does not mean habitual intemperance; but an act of intemperance producing impairment of health is within the condition of the policy, and renders the policy null and void except as therein provided."

This instruction is refused. The words of the condition are to be expounded according to the common and popular acceptation of their meaning. In this sense of them a single excessive indulgence in accoholic liquors is not intemperate, but there must be such frequency in their use, continued for a longer or shorter period, as indicates as injurious addiction to such indulgence.

"(10) If the jury find that the illness of William A. Davey at Alexandria bay in the summer of 1881, which resulted in his death, was occasioned by the use of alcoholic liquors, the policy was null and void except as therein provided in the eighth section.

"(11) If the jury find that the illness of William A. Davey at Alexandria bay, in the summer of 1881, which resulted in his death, was not occasioned wholly by the use of alcoholic liquors, but that the use of the same contributed to said illness, his health was impaired by said liquors, and the policy is null and void, except as provided in the eighth section."

These points are answered together. If the jury find that the illness of William A. Davey at Alexandria bay in the summer of 1881, which resulted in his death, was caused, either wholly or partially, by the intemperate use of alcoholic liquors, as explained in answer to the ninth prayer of the defendant, the policy was thereby avoided, except as therein provided in section 8.

"(12) If the jury find that the said William A. Davey drank alcoholic liquors at Alexandria bay to the extent testified to by the witnesses for the defense, and the effect of the same was to impair his health in any degree, the policy is void, except as provided in the eighth section."

The jury must consider the testimony on both sides touching the habits, course of life, and condition of W. A. Davey at Alexandria bay, and if they are satisfied that they became so far intemperate, as before explained, and that he there indulged his injurious taste as to impair his health in any degree, the policy is void, except as provided in the eighth section.

Now, gentlemen, there are two questions for your consideration here,—two branches of inquiry to which you must devote yourself to decide this case for the plaintiff or defendant. In the first place, was the question which I have read to you, No. 6, truthfully or untruthfully answered at the time the application was made out for this insurance? If the evidence satisfies you that before that time Mr. Davey was addicted, or had been addicted, to the excessive or intemperate use of any alcoholic stimulants or opium, or he was at the time in the habit of using any of these often or daily,—if the evidence satisfies your conscience that the answer, his denial of his addiction to such habit, or such daily or frequent use of alcoholic liquor or opium, is untrue, why it is your duty to find against the plaintiff. If you are not satisfied, however, then, so far as that ground of defense is concerned, why the defendant's case will fall. In the next place, you will consider the habits and course of the life of Mr. Davey after the execution and delivery of this policy of insurance. Did he become so far intemperate as to impair his health or induce *delirium tremens?* Did he become intemperate in the sense which I have explained to you in the answer to the defendant's prayer of instructions, and was his health impaired by such intemperance? If there is sufficient proof to satisfy you that this condition of the policy was broken by the habits and course of life of Mr. Davey after the execution of the policy, and his indulgence contributed to his death, then the plaintiff is not entitled to recover. As you consider the proofs on both sides touching these two branches of the case, your verdict will be for the plaintiff or defendant.

It is suggested by the counsel for the defendant, in his address to the jury, that if you are satisfied that this last condition of the policy was violated, the defendant is entitled to a general verdict in its favor. While it is true, gentlemen of the jury, that this violation of the condition of the policy does not work an entire forfeiture of it, but there

is a provision here for certain compensation,—the value of a paid-up policy or such amount as the premium would purchase,—yet you have no evidence before you as to the value of such policy, and although the plaintiff might be entitled to recover such sum, yet, under the state of the evidence here, if you are satisfied that the defendant has made out its defense, why you could not find anything more than nominal damages for the plaintiff. We do not know the value of such a policy. It may be worth only six cents, or it may be worth a thousand dollars. You are to judge of the evidence, and cannot indulge in any speculation as to the value provided for by this policy in favor of the insured, if the condition of the policy has been violated so that, if you are satisfied that upon that ground the defense has been made out, your verdict will be for the plaintiff for nominal damages.

*Mr. Strong.* With reference to the last point that your honor has stated, I desire simply to say, on behalf of the company, that we do not wish to avail ourselves of the lack of proof on that subject, and if the jury should find that, by reason of his intemperate habits, the conditions of the policy have been broken, which, however, would give the plaintiff a right to a paid-up policy for a certain amount, we are perfectly willing to have that amount ascertained afterwards.

*The Court.* That is altogether voluntary. I suppose that, having brought suit, the plaintiff has sued for all he is entitled to recover on this policy, and a verdict may stand in the way of that payment.

*Mr. Keasbey.* Such result may be moulded under the direction of the court, and the amount may be ascertained, I suppose, by reference or consent.

*Mr. Strong.* Shall I call your honor's attention to one or two points now or after the jury have retired? It is to take one or two exceptions to your honor's instruction in regard to question No. 6. Your honor spoke of the habit of intemperance.

*The Court.* I simply followed the example of your learned associate. He spoke of that—counsel on both sides spoke of the habit of daily use.

*Mr. Strong.* I should like to have an exception to that portion of the charge. Then, as to the point raised in regard to the doctor's certificate, the court stated that the jury is not to take that as evidence. We desire to except to that.

*The Court.* The jury have that; and in regard to that I said that while it is not to be taken as independent evidence of the facts set forth therein, its contents were recited by Dr. Rae in his examination before the jury.

*Mr. Strong.* It is simply to save the point we made in the course of the trial, in which we thought, it being furnished and offered by the plaintiff, it was evidence, and we wish to save that point.

*The Court.* You took the exception at that time. The evidence is before the jury. You objected then to my statement that it was not

to be taken as independent evidence of the facts set forth in it. I said it was not to be taken as independent evidence, but is to be taken in connection with the testimony of Dr. Rae. I cannot see that there is any ground for exception at all. It is evidence in connection with Dr. Rae's testimony, and the jury, of course, must attach such weight to it as they may deem proper, in view of Dr. Rae's affirmation or reaffirmation of the truth of that certificate.

*Mr. Strong.* Will your honor be good enough to give us an exception to the refusal to charge as prayed for?

*The Court.* You may except to each one of the answers as you choose. Note them now.

*Mr. Strong.* There are two or three that your honor refused to charge. We pray exceptions.

*The Court.* They are in writing. The first seven points I affirmed without qualification, and the rest are answered in writing. Note your exception.

*Mr. Strong.* Then, as to the eighth, the permanent impairment of health. We except to that. Also as to the ninth, which your honor refused to charge. We except to that, and to the charge as given upon that subject. We pray separate exceptions, of course, on all these points.

*The Court.* You may note the exception on each point.

The jury then retired, and after remaining out about 25 hours returned a verdict for the plaintiff for the full amount of the policy, with interest.

---

There are many interesting questions presented in the above case, in connection with which we may be permitted to note other cases in which like questions have been discussed.

In the particular case the court was asked to give the following instruction: The expression in the policy, "became so far intemperate as to impair his health," does not mean habitual intemperance; but an act of intemperance producing impairment of health is within the condition of the policy, and renders the policy null and void except as therein provided. This instruction, it will be noticed, the court declined to give, declaring that the words of the condition were to be expounded according to the common and popular acceptation of their meaning; and that in this sense of them a single excessive indulgence in alcoholic liquors was not intemperate, but there must have been such frequency in their use, continued for a longer or shorter period, as indicated an injurious addiction to such indulgence.

In *Bennecke* v. *Ins. Co.*[1] Mr. Justice FIELD, speaking for the supreme court of the United States, said: "The question was as to the habits of the insured. His occasional use of intoxicating liquors did not render him a man of intemperate habits, nor would an exceptional case of excess justify the application of this character to him. An attack of *delirium tremens* may sometimes follow a single excessive indulgence. * * * When we speak of the habits of a person, we refer to his customary conduct, to pursue which he has acquired a tendency from frequent repetition of the same acts. It

[1] 105 U. S. 350.

would be incorrect to say that a man has a habit of anything from a single act. A habit of early rising, for example, could not be affirmed of one because he was once seen on the streets in the morning before the sun had risen ; nor could intemperate habits be imputed to him because his appearance and actions on that occasion might indicate a night of excessive indulgence. The court did not, therefore, err in instructing the jury that, if the habits of the insured, 'in the usual, ordinary, and every-day routine of his life were temperate,' the representations made are not untrue, within the meaning of the policy, although he may have had an attack of *delirium tremens* from an exceptional overindulgence. It could not have been contemplated, from the language used in the policy, that it should become void for an occasional excess by the insured, but only when such excess had, by frequent repetitions, become a habit."

In *Union Mut. Life Ins. Co.*[1] the policy of insurance was conditioned to be void if either of the answers to the following questions was false or untrue Has the party whose life is to be insured ever been intemperate? Is the party now of correct and temperate habits? The answer to the first question was in the negative, and that to the second was in the affirmative. The trial court told the jury that these questions were not whether the insured was ever drunk or whether he ever used intoxicating liquors, but whether he was ever intemperate; that is, whether, at any period of his life, his usual and *daily habits* were such as to constitute and render him what is known as an intemperate man,—*a man habitually under the influence of intoxicating liquor.* This was held error, and the judgment was reversed. Mr. Justice Johnson, in delivering the opinion of the court, said: "An occasional excess in the use of intoxicating liquor does not, it is true, constitute a *habit* or make a man intemperate, within the meaning of this policy; but if the habit has been formed, and is indulged in, of drinking to excess and becoming intoxicated, whether *daily* and *continuously* or *periodically*, with sober intervals of greater or less length, the person addicted to such a habit cannot be said to be of temperate habits, within the meaning of this policy. In view of the fact that the evidence strongly tended to show that it was the habit of the insured to indulge to excess at frequent times, and did not tend to show a case of daily or continuous state of intoxication, this charge was clearly misleading. From it the jury might well understand, and, in view of the whole evidence, we think may reasonably have understood, that Charles Rice was of correct and temperate habits, although it was his habit to get drunk periodically and frequently, with sober intervals of longer or shorter duration. The habit of using intoxicating liquors to excess is the result of indulging a natural or acquired appetite, by continued use, until it becomes a customary practice. This habit may manifest itself in practice by daily or periodical intoxication or drunkenness. Within the purview of these questions it must have existed at some previous time, or at the date of the application; but it is not essential to its existence that it should be continuously practiced, or that the insured should be daily and habitually under the influence of liquor. Where the general habits of a man are either abstemious or temperate, an occasional indulgence to excess does not make him a man of intemperate habits; but if the habit is formed of drinking to excess, and the appetite for liquor is indulged to intoxication, either constantly or periodically, no one will claim that his habits are temperate, though he may be duly sober for longer or shorter periods in the intervals between the times of his debauches."

In *Swick* v. *Home Life Ins. Co.*,[2] the case being before Justice Dillon and Justice Treat, the jury were instructed as follows: "Now, as to the question respecting intoxicating liquors. These relate to the habits of the party. The applicant stated that he had never been addicted to the excessive or intem-

¹ 6 Ohio St. 596.                    ² 2 Dill. C. C. 160.

perate use of alcoholic stimulants. This is not a statement that he had never been addicted to the use of intoxicating liquors at all, but a statement that he had never been addicted to the excessive and intemperate use of them; and it is untrue if Henry had, and only in case he had, been addicted to the excessive or intemperate use of alcoholic stimulants. The application, in answer to other questions, stated that his habits were uniformly and strictly sober and temperate, and that he did not habitually use intoxicating drinks as a beverage. These questions and answers, you will perceive, relate to the habits of the party in that respect. If the company did not intend to insure any person who used intoxicating liquors at all, it would be very easy to ask such a question. But they have not done so. The occasional use of intoxicating liquors by the applicant would not make these answers untrue; nor would they be rendered untrue by any use of intoxicating drinks which did not make his habits those of a man not uniformly and strictly sober and temperate, or which did not amount to habitual use of such drinks as a beverage."

In *Knickerbocker Life Ins. Co.* v. *Foley*[1] the court sustained as a good instruction one which was to the following effect: If the jury finds that the habits of the insured at the time of, or at any time prior to, the application were not temperate, then the answer made by him to the questions, "Are you a man of temperate habits? Have you always been so?" were untrue, and the policy was void; but if the jury finds that his habits, in the usual, ordinary, and every-day routine of life, were temperate, then such representations were not untrue within the meaning of the policy, although they may find that he had an attack of *delirium tremens* resulting from an exceptional indulgence in drink prior to the issuance of the policy.

In *Brockway* v. *Mutual Benefit Life Ins. Co.*[2] it was declared that the terms "sober" and "temperate" were to be understood in their ordinary sense; that they did not imply total abstinence; that a moderate and temperate use of alcoholic liquor is consistent with sobriety, but if used to such an extent as to produce frequent intoxication the applicant could not be considered sober and temperate.

In *Holterhoff* v. *Mutual Benefit Life Ins. Co.*,[3] where a policy of life insurance contained a provision that in case the assured should die by reason of intemperance from the use of intoxicating liquors the policy should be void, it was laid down that death must be the natural and proximate result of intemperance from the use of intoxicating liquors. And the following charge was sustained: "A habit, then, as generally understood, and as defined by lexicographers, is a disposition or condition of the mind or body, a tendency or aptitude for the performance of certain actions acquired by custom, or a frequent repetition of the same acts. Habit is that which is held or retained, —the effect of custom or frequent repetition. Hence we speak of good habits and bad habits. Frequent drinking of spirits leads to habits of intemperance, etc. Adopting this interpretation of the phrase used in the present instance, and applying it to the state of facts as claimed to be proven, I have to say to the jury that if they find from the evidence that at the time the application was made, or subsequently, the deceased had an appetite for intoxicating drinks to such an extent that a single indulgence necessarily instigated him to a repetition of it, and led him into what have been called 'sprees,' and these sprees were frequent, and rendered him incapable of controlling his appetite while they continued, then, although there were intervals during which he remained entirely sober, there was such a repetition of acts of drinking as amounted to a habit."

In *Miller* v. *Mutual Benefit Ins. Co.*[4] it was held that evidence that the plaintiff's decedent died from a cause occasioned or produced by an excess-

[1] 11 Fed. Rep. 766.   [2] 9 Fed. Rep. 249.   [3] 3 Ins. Law J. 854.   [4] 34 Iowa, 222.

ive use of intoxicating liquors, would support the defense that he died from intemperance. The policy contained a condition making it void if the person insured should die "by reason of intemperance from the use of intoxicating liquors.' In one of his debauches, having passed several days at a saloon drinking, he was taken home, a physician was called, and he was found to be suffering from *delirium tremens.* In his delirium he escaped from those having charge of him and ran through the streets in inclement weather, in his underclothes. This brought on congestion of the lungs and resulted in death. The court held there could be no recovery upon the policy.

In *Knecht* v. *Mutual Life Ins. Co.*[1] the policy contained a provision like this: If any of the statements or declarations made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, this policy shall be null and void. In his application the applicant had declared "that he does not now, nor will he, practice any pernicious habit, which obviously tends to the shortening of life." It appeared in evidence that at the time of making the application the applicant was of correct and temperate habits, but that some years afterwards he became addicted to the use of intoxicating drinks, and was finally attacked with *delirium tremens*, from which attack he died. The court held that the policy was not invalidated. The clause of the application above alluded to, it was said, evidently referred to a state of things existing at the time the policy was issued, and as such contained no untrue statement; his declaration as to his future intentions not being false at the time it was made.

In *Cartside* v. *Connecticut Mut. Life Ins. Co.*[2] it was held that where an insured person was shown to have been intemperate after the policy of insurance was issued, the presumption was that he became so after the date of the policy

In *Odd Fellows' Mut. Life Ins. Co.* v. *Rohkopp*[3] the policy was conditioned to be void if the insured "should become so far intemperate as to seriously or permanently impair his health, or induce *delirium tremens.*" It appeared in evidence that the insured had become habitually intemperate, and had been so for years. It was held that this fact, standing by itself, was of no account. It was necessary to show in addition that his health had been seriously or permanently impaired thereby.

In *Hartwell* v. *Alabama Gold Life Ins. Co.*[4] the supreme court of Louisiana held that a policy of life insurance would be annulled when the insured had made misrepresentations to the insurer as to his habits of drinking, although he himself, in making the declarations, may have acted in good faith, and not have intended any deception.

In *Shader* v. *Railway Passenger Assurance Co.*[5] an accidental insurance policy contained a clause providing that no claim should be made thereunder where the death or injury may have happened while the insured was, or in consequence of his having been, under the influence of intoxicating drink. It appeared in evidence that he had been killed by a pistol shot; and the court held that if death occurred while he was under the influence of intoxicating drink, that fact alone avoided the policy, without regard to the question whether that condition was the natural and reasonable cause of death, or in any manner contributed thereto.        HENRY WADE ROGERS.

[1] 0 Pa. St. 118.        [3] 94 Pa. St. 59.        [5] 66 N. Y. 441.
[2] Mo. App. 593.        [4] 11 Ins. Law J. 897.