PROVIDENT SAV. LIFE ASSUR. SOC. v. EXCHANGE BANK OF MACON.

(Circuit Court of Appeals, Fifth Circuit. October 17, 1903.)

No. 1,254.

1. LIFE INSURANCE—REPRESENTATIONS IN APPLICATION—"USE" OF LIQUOR.

A question in an application for life insurance, "Have you ever used spirits, wine, or malt liquors to excess?" does not mean, "Did you ever drink to excess?" but the word "used" implies more than a single or occasional act. The question is equivalent to one asking whether the applicant ever had the habit of drinking to excess, and a negative answer does not constitute a misrepresentation or false statement, which will avoid a policy issued thereon, merely because it is shown that the insured had sometimes, but not habitually, drank to excess.

In Error to the Circuit Court of the United States for the Southern District of Georgia.

¶ 1. See Insurance, vol. 28, Cent. Dig. § 676

James H. Gilbert, for plaintiff in error.
A. L. Miller, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM.   In the construction of the policy and application involved in this case we concur with the learned judge presiding in the Circuit Court.   In his charge to the jury, Judge Speer said:

"These grounds of defense are, first, that the policy was obtained by false and fraudulent stipulations and misrepresentations made to the assurance company by Bivins, as follows: That in the application made to the defendant by Bivins, dated April 3, 1894, in reply to the question therein, 'Have you ever used spirits, wine, or malt liquors?' he said and answered, 'Moderately.'   In reply to the question whether he had ever used spirits, wine, or malt liquors to excess, he said and replied positively and without qualification that he never had.   Relying upon the faith of this, it is alleged that the company issued the policy, and it now says that these statements were not true, but were made with the purpose and intent on the part of said Bivins to conceal the truth, and fraudulently to mislead and deceive it, and induce it to accept a risk which the defendant in no wise would have done, the answer states, 'had the truth in respect to his use of wines, spirits, or malt liquors been made known by Bivins to the defendant.   *   *   *'

"Now, let us give more careful attention to the language of these questions. 'Have you ever used spirits,' etc., 'to excess?'   What is the meaning of the word 'used' in this connection?   That, in my judgment, is the crucial question in the construction of this application.   The word 'used' adopted for the purpose of this question does not imply an occasional indulgence in strong drink.   It means to be accustomed, to make a practice of.   When you speak of a man as using diligence in business, you mean that he is habitually industrious and attentive to business.   In his essay on Ranke's History of the Popes, that master of our language, Macaulay, says: 'The Catholic Church neither submits to enthusiasm nor prescribes it, but uses it.'   It is a word which is synonymous with—that is, meaning the same with—'custom' or 'habit,' or, in this case, 'habitual indulgence.'   Habit in this connection imports a disposition or condition of the body or mind acquired by custom, or a frequent repetition of the same act; or, to express it otherwise, the customary conduct to pursue which one has acquired a tendency from the frequent repetition of the same act.   When a man states he uses tobacco, he means that he smokes and chews it as a habit.   If the assurance company had desired to know whether the insured was a total abstainer, it doubtless would have chosen language in the preparation of its questions which must have evoked the fact; such, for instance, as, 'Are you a total abstainer?' 'Do you drink?' 'Do you drink to excess?' or, 'Have you ever been drunk?' Now, it is perhaps true that few insurance companies could profitably conduct their business if they restricted their policies to those who never indulged in strong drink, namely, total abstainers.   It is essential to the earning capacity of the company that it should induce persons to insure, and it is also essential to the same thing that it should only take safe risks. With this view, as I construe the language of those questions, the defendant has sought to guard against men who habitually use ardent drink, and especially against those who ever habitually drink to excess.   Hence the utilization of the words, 'Have you ever used,' etc., which do not fairly mean, in this connection, have you ever partaken, but have you been in the habit of drinking, or have you ever been in the habit of drinking to excess.   This I take to be a just and practical construction of this language, which it is the duty of the court to make, and of the jury to accept.   It was not denied by the insured that he used—that is, that he was accustomed to partake of —liquors.   He said, however, that he did this 'moderately.'   Since the company issued the policy in view of that statement, it would be bound by it, so far as that is in issue, unless it is proved to be false.   He did, however, deny that he ever used spirits, etc., to excess.   It will be observed that I un-

derstand the words, 'Have you ever used spirits * * * to excess?' to mean, have you ever had the habit of drinking to excess. The Supreme Court of the United States in the case of Insurance Company v. Foley [105 U. S. 350, 26 L. Ed. 1055] passed upon practically the same question, and that decision is not only advisory to the court and illuminating, but it is controlling. There the inquiry was, 'Is the party of temperate habits?' 'Has he always been so?' The answers were, 'Yes.' The insurance companies contended that that was not true. One witness testified that in 1871 and in 1872 he was the family physician of the insured; that at that time the insured was drinking hard; that during the year he attended him for delirium tremens, and once or twice for indisposition produced, as he thought, from the excessive use of intoxicating drink; and that he regarded him as a man of intemperate habits. On cross-examination he admitted that he did not know the insured intimately, had no relations with him other than professional, and saw him only when he attended him professionally or met him occasionally on the street. Other witnesses testified that he was a very intemperate man, and that they had frequently seen him under the influence of liquor. But in that case for the plaintiff several witnesses were called who had known the insured intimately for many years. One of them had been his partner in 1869 and 1870, and they all testified unqualifiedly to his being a man of temperate habits. The court in passing on these facts said: 'The question was as to the habits of the insured. His occasional use of intoxicating liquors did not render him a man of intemperate habits, nor would an exceptional case of excess justify the application of this character to him.' And then the learned justice states the somewhat startling proposition: 'An attack of delirium tremens may sometimes follow a single excessive indulgence. When we speak of the habits of a person we refer to his customary conduct, to pursue which he has acquired a tendency from frequent repetition of the same acts. It would be incorrect to say that a man has a habit of anything from a single act. A habit of early rising, for example, could not be affirmed of one because he was once seen on the streets in the morning before the sun had risen. Nor could intemperate habits be imputed to him because his appearance and actions on that occasion might indicate a night of excessive indulgence. The court did not, therefore, err in instructing the jury that if the habits of the insured, in the usual, ordinary, and every day routine of his life, were temperate, the representations made were not untrue within the meaning of the policy, although he may have had an attack of delirium tremens from an exceptional overindulgence. It could not be contemplated from the language used in the policy that it should become void for an occasional excess of the insured, but only when such excesses had by frequent repetitions become a habit.' This is but another form, I think, of expressing the same deduction I have made for your assistance from the words, 'Have you ever used spirits * * * to excess?' "

The judgment of the Circuit Court is affirmed.