### SARGENT *v.* HOME BENEFIT ASS'N.

(*Circuit Court, S. D. New York.* May 22, 1888.)

1. INSURANCE—PROOF OF DEATH—ESTOPPEL BY ADMISSIONS.

In an action on a policy of life insurance excepting from the risks assumed death of assured "by his own hand or act, voluntary or involuntary, sane or insane," it appeared that the proofs of death signed by plaintiff contained this question, "Was the death caused by his own hands or acts?" The answer was, "See statement of coroner's physician, Dr. J." That statement gave "the immediate cause of death" as "shock from penetrating shot wound of head. Mental aberration, superinduced by chronic headache;" and set out

that he (Dr. J.) could not say further than that whether the assured came to his death "by his own hand" or not. After the testimony was all in, and there was evidence that the statement of Dr. J. was based on hearsay, the company asked an instruction to the effect that plaintiff was estopped by the proofs of death to contend for any other cause of death than suicide, and that the burden was on plaintiff to show that death did not result from suicide. *Held* properly refused, the statements in the proofs not working an estoppel, the company not having been prejudiced thereby, and the whole charge upon the subject having instructed the jury to consider the proofs, and upon all, the evidence to say what the exact truth was.

2. SAME—EVIDENCE—RELEVANCY—CROSS-EXAMINATION.
  The only defense set up to an action on a policy excluding from the risks assumed "death of the assured by his own hand, sane or insane," etc., was "suicide." Plaintiff called the attorney who had made the claim, and he testified to the delivery of the proofs of death, and as to the circumstances under which he presented to the company a paper purporting to be the coroner's inquest. Defendant then introduced its secretary, and he, having been allowed to state his version of the conversation between the attorney and himself, was asked on cross-examination if he had not said in that conversation that, "if it depended upon him, the loss would be paid without delay." *Held*, that the question, relating as it did to the conversation, part of which had gone in, was relevant; plaintiff being entitled to all that had transpired.

3. NEW TRIAL—VERDICT CONTRARY TO EVIDENCE.
  The fact that the court would, if the cause had been tried without a jury, have reached a different conclusion, is not sufficient ground by itself for setting a verdict aside as contrary to the evidence, and granting a new trial.

At Law. On motion for new trial.

This is an action upon a policy of insurance for $5,000, dated September 5, 1885, issued to Henrietta P. Sargent, the plaintiff, upon the life of Edward F. Hall, Jr., who was her brother. The policy was security for $5,000 loaned by the plaintiff to Hall. One of the conditions of the policy was as follows: "Death of the member by his own hand or act, whether voluntary or involuntary, sane or insane at the time, is a risk not assumed by the association under this contract." The only defense is that Hall committed suicide. On the morning of October 19, 1886, he was found lying dead upon his bed in his room on the fourth floor of a boarding-house in the city of New York, with a severe wound in his right temple, and near his hand a revolver with three chambers discharged. A cry for help was heard. No shot was heard, although the door was open, and one servant was on the same floor and another in the hall immediately below. Upon a stand in the room was a letter written by Hall to his physician in which he complained of a headache, which had grown in intensity until it had become "almost unbearable." This condition of his head is the only cause assigned to support the theory of suicide. On the other hand, it was proved that Hall was a man of sanguine temperament, social in his habits and hopeful as to the future. As no one saw the wound inflicted which caused the death, it was submitted to the jury upon all the evidence to say whether Hall committed suicide, with the instruction that, if he did, the policy was void, even though at the time he was wholly bereft of reason. The proofs of death furnished to the defendants and signed by the plaintiff contain this question, "Was the death of deceased caused by his own hand or act?" The answer was, "See statement of coroner's physician, Dr. Jenkins." On the next page appears the statement of Dr. Jenkins. In re-

ply to the question, "State the immediate cause of death," he answers, "Shock from penetrating shot wound of head, (right temple.) Mental aberration, superinduced by chronic headache." In answer to a series of questions, one of which was, "Was the death of deceased caused or accelerated or aggravated by his own hand or acts?" Dr. Jenkins answered, "I examined the deceased only as coroner's physician, and therefore am unable to make any further statement than above, other than from the history. His mental condition was probably due to chronic headaches, which were caused either by chronic *meningitis* or tumor of brain." John S. Moulton, one of the attorneys for the plaintiff, was called to prove that he delivered the proofs of death to the company, and the circumstances in which he presented the paper purporting to be the coroner's inquest. His testimony was strictly confined to these points. Subsequently the defendants called Andrew Brownell, the secretary of the company, to state his version of the conversation, which did not vary materially from that given by Moulton. The defendants' counsel then asked: "What was the substance of the understanding between you as to the manner in which Mr. Hall met his death, if that was mentioned between you?" This being objected to by the plaintiff, the court permitted the witness to state anything that took place during that conversation. Brownell answered: "That he met his death by his inflicting a pistol shot, and that we must have the coroner's verdict, which he said he would furnish in a few days." · The court then stated that unless this was said in the conversation with John S. Moulton it would be stricken out. The witness stated that it was said during that conversation, and that Moulton had never withdrawn or contradicted the statement. Upon cross-examination of this witness, the plaintiff's counsel asked if certain other things were not said during the conversation, and, among other things, if he, Brownell, did not say that, if it depended upon him, the loss would be paid without delay. This was objected to upon the sole ground that it was irrelevant. The objection was overruled, and the defendants excepted. The jury found for the plaintiff. The defendants now move for a new trial.

*Austin G. Fox* and *Francis Lawton*, for the motion.

*Osborn E. Bright* and *Miron Winslow*, contra.

COXE, J., (*after stating the facts as above.*) No valid reason for setting aside the verdict as against the evidence is suggested. The fact that the court, if the cause had been tried without a jury, would have reached a different conclusion, is not sufficient. The court is not permitted to substitute its opinion upon questions of fact for that of the jury. They had the power to render this verdict, and there is no precedent for disturbing it.

The principal question now argued relates to the declarations in the proofs of death. It is urged that because of these the plaintiff is estopped from asserting that the death of Hall was caused otherwise than by suicide and that, in any event, the court should have held that the burden originally upon the defendants was, by the introduction of the proofs, shifted from them to the plaintiff, and it then became her duty to satisfy

the jury by a preponderance of evidence that the assured died otherwise than by his own hand. It is thought that the defendants were not entitled to these rulings for the following reasons: *First.* The defendants were in no way prejudiced by the statements and opinions in the proofs. There was therefore no estoppel. Bliss, Ins. (2d Ed.) § 265, and cases cited. *Second.* When the request was made for an instruction to the jury that the introduction of the proofs shifted the burden of proof, the evidence was all in; evidence much more full and complete than that upon which the coroner's physician based his opinion. The physician himself had been examined, and his knowledge, or lack of knowledge, at the time he made his certificate, was fully disclosed. The proofs had then been explained. The defendants might have rested their defense upon the proofs alone in which event, assuming the defendants' construction of the physician's language to be correct, it is possible that they would have been entitled to the instruction in question. But when, in conjunction with the proofs, came testimony explaining them, and showing that the statements of the physician were based on hearsay, and were merely guess-work on his part, such an instruction would have been erroneous. *Third.* The declarations in the proofs, construed together, do not contain an admission that Hall committed suicide. They state the facts, or what at the time the doctor supposed to be facts, and leave the defendants to draw their own inferences. It is true that the conclusion of suicide may be drawn from them, but, when it is sought to give them the force of an admission that the policy was void, they should be carefully and strictly scrutinized. The language used by the physician is not inconsistent with the theory of death by accident, especially in view of the fact that, when asked the direct question whether Hall died by his own hand, he declined to answer it, and stated his reasons therefor. A man, while dazed or delirious from pain, might meet a self-inflicted, but wholly accidental, death. He might walk through a window supposing it to be a door, or drink a poisonous draught mistaking it for water, or discharge a pistol inadvertently believing it to be some harmless instrument, or while holding it in hands rendered nerveless and inert by the presence of disease; and yet a death so occasioned would not be within the terms of the clause in question, and a statement of such facts can hardly be said to include an admission of suicide. *Penfold* v. *Insurance Co.*, 85 N. Y. 317. The proofs leave the manner of Hall's death very much where the evidence of the trial left it,—in doubt. The problem thus presented it was the duty of the jury to solve. *Fourth.* The charge as given upon this subject was as favorable to the defendants as the facts warranted. The jury were told to consider the proofs, and upon all the evidence to say what the exact truth was.

The question put to the defendants' secretary, Brownell, upon cross-examination, as to his willingness to pay the loss, was admitted because the statement was made during a conversation regarding which the witness had been fully interrogated by the defendants' counsel. The plaintiff was therefore entitled to all that took place at this interview. Although the question is broader than need be, the record shows conclu-

sively that counsel and witness were strictly confined to the conversation in question, and it is not now pretended that any other was referred to. Although the objection was properly overruled upon several grounds, it is unnecessary to consider them, as it is thought that the reason above stated is amply sufficient to justify the ruling.

The other exceptions to which argument has been directed have been examined; but it is thought that no error is pointed out which would justify the court in setting aside the verdict. The bill of exceptions presents fairly every question necessary for a full determination of this controversy, and it would seem to be for the interest of both parties that it should be settled by the court of last resort with as little delay as possible. The motion is denied.