The opinion of the court was delivered by ,
Miller, J.
The plaintiff sues on a policy of insurance issued by the defendant on the life of her husband. The defence is, the husband committed suicide, and the policy excludes liability in cases of self-destruction, sane or insane. The jury found for the defendant and plaintiff appeals from the judgment on the verdict.
The proofs of loss furnished the company, i. e., statements of the undertaker, physician, agent and friend, as well as the coroner’s inquest, stated suicide as the cause of death. The defendant offering these proofs insisted plaintiff was bound by them, that is, defendant objected to any testimony contradicting these proofs. The court admitted the testimony. It is to be observed at the outset, the cause of death in this case is purely a matter of opinion. There is no testimony whatever on the subject, except the fact the insured was found dead from a mortal gunshot wound, with a pistol wedged in the bend of his thumb, and the body so disposed, as will be discussed in another place, as to suggest inferences entirely consistent with accidental death or at least not of a character to exclude every sup-posit on but suicide. If opinions of witnesses as to the cause of death are to be accepted as conclusive, contained in statements which the company exacts under their policy, it is a harsh application of the supposed rule as to the effect of such statements. In our opinion, neither reason nor authority support the contention of the company in this respect. We think the proofs of death were admissible to be weighed by the jury with other testimony administered. Such was the ruling of the lower court and we sustain it. See Home Association vs. Sargent, 142 U. S. 699; Company vs. Newton, 22 Wall, p. 36; 26 An. 404. The authorities, perhaps, do not go the full length here affirmed, but they tend to give the proofs of death admissibility, but certainly do not assert their conclusiveness. The better opinion is the insurer is not estopped by the proof. Bliss Life Insurance, Sec. 265.
The discussion on the point that suicide should be regarded as *1192 proceeding from insanity, and not bar recovery, even though the policy stipulated no recovery in cases of self-destruction, has been ended, as life policies now usually, we believe, contain what is known as the “sane or insane” clause, i. e., no recovery in cases of suicide, sane or insane. That clause is in this policy.
But still, notwithstanding the sane or insane clause, to defeat a recovery on this policy it must appear the deceased took his life. In this case the testimony, mainly the mute witness of the dead body, is all on which the company relies, besides the statement in the proof of loss from those who were possessed of no knowledg', save that afforded by the body of the deceased. Th re is in the record a mass of what is termed expert testimony. It of course consists of theories as to the cause of the death. The testimony is of those who testify from their experience in the use of firearms and from physicians who draw their inferences from the gunshot wound, the position of the body and other circumstances. The admissibility of such testimony is at best doubtful. Bliss on Life Insurance, Secs. 378, 379. The court at lastmust determine the basis and potency of all such theories arising from all the facts. These facts are: The body found with the wound from a gunshot causing death, the discharged pistol wedged, or as if it had been forced on the thumb of the right hand, the body i eclining on the sofa as of one sleeping, the left arm rested on the breast, the right leg crossed on the left, the head in the usual position of one in repose, and there being no evidence of any convulsive movement, if we correctly translate the technical word “jactitation,” used by the physicians who testify. The pistol was “ tightly wedged ” to the thumb so as to require force to remove it. The question is whether these appearances point to suicide, to the exclusion of any other cause? Why not, with equal potency, to accidental death or death by the hand of another?
Dr. Gray, who was one of those who gave a statement at first attributing the death to suicide, seems to have changed his opinion. He testifies:
“ I was first led to believe it was suicide from the fact that the body was dead and the pistol was on his hand, but the fact as stated in a previous answer (viz.: that thumb was thrust through guard of pistol and tightly wedged as if it had been thrust in forcibly) the force necessary to draw the thumb from the guard, the absence of any evidence of jactitation, or of having been any, as shown by the *1193 precise manner in which the body laid, with arms folded, the legs crossed at ankles as in a person sleeping, have raised doubts in my mind as to how his death did occur, whether by his own hand, or by that of another.” The testimony of othei’3 professing to be experts as to the handling of firearms and the causes of this death reaches a conclusion different from that of Dr. Gray. We think, giving all due effect to the expert testimony, it is at least fair to say it does not establish the suicide.
In any consideration of the cause of the death weight is due to the condition of the deceased in life, i. e., his domestic relations, his means, his health and the state of his mind. It is human experience that the motive prompting . self-destruction is to be sought, and usually found, in domestic unhappine s, ill health, financial troubles or insanity. In this case no such causes are exhibited by the record. The deceased was fortunate in business, had a wife and children to whom he was attached, and with whom he was happy. He parted with them on the day of his death in the best of spirits, and the shock of his death came a few hoars later. No physical malady or mental disturbance or financial trouble existed to furnish any cause for taking his life.
In this condition of the record there is no adequate basis to refer the death.to the intentional act of the deceased. If there are indications that point to suicide, there are other features noi consistent with that theory. When, as in this case, circumstantial ev.dence alone is relied on to establish suicide, it is at least within bounds to say the evidence must be of a character to exclude with reasonable certainty any other cause of death. If the evidence falls short of this exaction the suicide is not proved. The fact of death remains, and that casts the liability on the company insuring against death; with the excepted case of self-destruction which the company fails to establish. This appreciation of the evidence and of the burden of proof constrains us to set aside the verdict and judgment of the lower court in favor of the defendant. Bliss on Life Insurance, Secs. 366, 367; 47 N. Y. 52; 26 An. 404.
It is therefore ordered, adjudged and decreed that the judgment oi the lower cour. be avoided and reversed and that plaintiff do have and recover from defendant five thousand dollars with legal interest, and that appellees pay costs.
Rehearing refused.