## SOVEREIGN CAMP WOODMEN OF THE WORLD v. HALLER.

[No. 3,006.   Filed February 14, 1900.]

LIFE INSURANCE.—*Suicide.*—*Evidence.*—In an action on a life insurance policy exempting defendant from liability for death by suicide, the evidence showed that the insured and his wife lived together in a house jointly built by them on a lot owned by the wife; that the wife brought suit for divorce, charging him with drunkenness and cruel treatment, and procured a restraining order prohibiting him from returning to his home; that the insured disappeared, and a few days later his hat was found on the banks of a creek at an unfrequented place, and tracks made by some person going into the stream were found, but no tracks were found showing that such person had come out; that the dead body of the insured was found with no marks upon it, and no evidence of violence, within a few feet of the place where the tracks led into the stream. *Held*, that the evidence excluded with reasonable certainty any hypothesis of death by any other cause than suicide, and was insufficient to support a judgment for plaintiff.

From the Vanderburgh Circuit Court. *Reversed.*

*C. L. Wedding*, for appellant.
*R. D. Richardson* and *P. W. Frey*, for appellee.

HENLEY, J.—This was an action brought by the appellee against the appellant upon a policy of insurance issued by

appellant on the life of one Christian Haller, and made payable by the terms of said policy to appellee, Rosa Haller, who was the wife of the assured. A demurrer to the complaint was filed and overruled. Appellant answered in one paragraph. This paragraph seeks to avoid any liability under the policy of insurance, for the reason that it is alleged that the assured committed suicide. One of the provisions of the certificate, or policy of insurance, was as follows: "If the member holding this certificate shall be expelled from the fraternity, or become so far intemperate, or use opiates to such an extent as to permanently impair his health, or to produce delirium tremens, or shall die in consequence of a duel, or by his own hand (except it be shown that he was at the time insane) or by the hands of the beneficiary or beneficiaries named herein (except by accident), or in consequence of the violation or attempted violation of the laws of the State or of the United States, or of any other province or nation, or if any of the statements or declarations in the application for membership and upon the faith of which this certificate is issued shall be found in any respect untrue, then, in every such case, this certificate shall be null and void, and of no effect, and all moneys which shall have been paid and all rights and benefits which may have accrued on account of this certificate, shall be absolutely forfeited without notice or service." The same provision as to the liability of the appellant was a part of the appellant's by-laws, which were made a part of the policy of insurance by reference thereto. The answer, which was based on the violation of the above provision of the policy, was the only one filed, and the cause went to trial upon the issue thus formed. The trial was by a jury, which returned a verdict in favor of appellee, and, over appellant's motion for a new trial, judgment was rendered in her favor for the amount of the policy and interest. The only assigned error discussed by appellant's counsel questions the ruling of the lower court in overruling the appellant's motion for a new trial.

It is first contended that the verdict and judgment are not sustained by sufficient evidence. The evidence is short, and not conflicting in any material part. Christian Haller, the assured, was a member of White Oak Camp number twenty-six, Woodmen of the World, and had issued to him a beneficiary certificate upon his life payable· to his wife, Rosa Haller, the appellee. The assured was a shoemaker, in Evansville, Indiana, his shop being about one and one-half miles from his residence; on account of the distance, he usually took his dinner with him; at other times his wife would take his dinner to him. The house in which the Hallers lived was built by the husband and wife, each contributing to the expense thereof, and upon a lot owned by the wife. On the morning of November 17, 1897, the assured left his residence, and went to his shop to work. Some time during the day his wife commenced an action against him for divorce, in which she charged him with cruel treatment and drunkenness, and procured a restraining order from the court prohibiting him from returning to his home and usual place of residence. He disappeared, and a few days later his hat was found on the banks of Pigeon creek, which runs through the city of Evansville. The hat was found at an unfrequented place about two and one-half squares from any crossing or traveled way over said creek. At the point where the hat was found, tracks made by some person going into the stream of water were found, but no tracks showing such person had come out. Search was made in Pigeon creek near where the hat was found, which resulted in the finding of the dead body of the assured within a few feet of where the tracks led into the stream. There were no marks upon the body, no evidence of any violence, no other footprints, and no evidence of any struggle upon the bank. Pigeon creek, at the point where the body was found, was ten to fourteen feet deep, and forty to sixty feet wide; the water was falling, leaving a muddy approach three or four feet wide to the "step

off" into the deep water. Appellee made a *prima facie* case by the introduction of the beneficiary certificate, proof of death, and that the assured was a member of the fraternity in good standing at the time of his death. Notice of death was waived. The other facts proved were not material upon the issue made by appellant's answer.

The question then is: Had the jury the right to draw from this evidence the inference that the assured did not commit suicide, or were the facts proved such as would exclude any other inference than that the assured voluntarily took his own life? It seems to be the settled rule of law in all jurisdictions that where death results from drowning, or other unnatural cause, self destruction is not to be presumed; the law presumes that such death was the result of accident. Bliss on Ins., §337; *Travelers Ins. Co.* v. *McConkey*, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. ed. 308; *Home, etc., Assn.* v. *Sargent*, 142 U. S. 691, 12 Sup. Ct. 332, 35 L. ed. 1160; *Mutual Ins. Co.* v. *Wiswell*, 56 Kan. 765, 44 Pac. 996, 35 L. R. A. 258; *Travelers Ins. Co.* v. *Nicklas*, 88 Md. 470, 41 Atl. 906; *Travelers Ins. Co.* v. *Nitterhouse*, 11 Ind. App. 155; *Walcott* v. *Metropolitan Ins. Co.*, 64 Vt. 221, 24 Atl. 992.

In *Travelers Ins. Co.* v. *Nitterhouse, supra*, on p. 164, it was said: "It should also be borne in mind that so strong is the instinctive love of life and so uniform the efforts of men to preserve their existence that suicide cannot be presumed. The presumption is that the death of the insured was not voluntary." In the case last quoted from, the insured was found on his back upon the floor in front of a mirror with a bullet hole in his forehead. He held a revolver in his right hand with its muzzle pointing to his head. No one was present and saw the shot fired, but it was shown by the evidence that Nitterhouse had money and friends, a wife and four children; that his domestic relations were pleasant; that he was sober and industrious; that nothing in his previous history would warrant the belief that he

came to his death by suicide; he had been sick, but had never complained of his condition. These and other facts shown by the evidence in the Nitterhouse case, which is so strongly relied upon by appellee, was evidence supporting the presumption that Nitterhouse met his death accidentally. But in the case at bar the presumption that the assured did not commit suicide is not supported by any of the facts produced upon the trial. Appellee herself testifies that the domestic relations between herself and the insured were exceedingly unhappy; that the insured drank to excess. Without any previous notice that such action was contemplated by his wife, so far as the record shows, the assured was served with notice of the commencement of the action for divorce, and was restrained from entering the home, which the evidence shows he helped to establish by his labor and money; he disappeared, and was found under the circumstances heretofore set out.

It is a firmly established rule of law that in an action on a policy of life insurance, where the defense is self-destruction, the burden is on the insurer to prove by a preponderance of the evidence the suicide of the assured, and the defense fails unless the evidence produced excludes with reasonable certainty any hypothesis of death by accident, or by the act of another. *Leman* v. *Manhattan Ins. Co.*, 46 La. Ann. 1189, 15 South. 388, 24 L. R. A. 589; *Gooding* v. *United States Ins. Co.*, 46 Ill. App. 307; *Travelers Ins. Co.* v. *Nitterhouse, supra.* "Love of life is a rebuttable presumption of law and the burden of proof is on him who alleges the contrary." 19 Am. & Eng. Ency. of Law, p. 45. Medically speaking, the drowning of a person is presumptively suicidal when there are no marks of violence. Taylor's Med. Jur., 483; Burrill on Cir. Ev., 716.

In the case of *Guardian Ins. Co.* v. *Hogan*, 80 Ill. 35, it was held that where the defense in a suit upon a policy of life insurance is that the death of the assured was produced by self destruction, the question should be fairly

submitted to the jury, and be decided by them upon a preponderance of the evidence, and that it was error for the trial court to instruct the jury that, if the evidence leaves the matter in doubt, the presumption is that the death was produced by natural causes.

In *Whitsett* v. *Chicago, etc., R. Co.*, 67 Iowa 150, 25 N. W. 104, it was held error, where the circumstances of the case were proved by direct testimony, to instruct the jury that, in weighing the evidence, they could consider and give proper weight to the presumption which naturally leads men to preserve their own lives, in determining whether, at the time the injury occurred, the injured party was in the exercise of ordinary care.

Appellee's counsel insist that if the judgment in this cause is reversed on account of the insufficiency of the evidence, the court will be compelled to depart from its long established rule that it will not weigh the evidence. Where all the evidence tends to prove one fact, there can be no conflict. The question of preponderance or weight of the evidence is not involved. If a plaintiff upon the trial of a cause introduces evidence to prove every material allegation of his complaint, and the defendant introduces no evidence whatever, or introduces no evidence tending to disprove the material allegations of the plaintiff's complaint, the trial court would necessarily find for the plaintiff; if a finding was entered for the defendant in such a case, and an appeal taken, the judgment would be reversed because not sustained by the evidence, and, for such reason, contrary to law. The court would not weigh the evidence, because upon the part of appellee there was no evidence. In the case at bar, no issue is presented by the complaint and answer. The issue is made by the answer and reply. Every material allegation of the complaint is admitted by appellant. Appellee denied the facts averred in appellant's answer. Upon the issue upon which the cause was tried, we think all

the evidence introduced tended to prove the defense which appellant interposed. There was no evidence which in any way tended to disprove the material allegations of appellant's answer. It was necessary that appellee deny the material averments of appellant's answer, or suffer judgment to go against her. Upon the trial of the issue presented, appellant produced evidence which excluded with reasonable certainty any hypothesis of death by any other cause than suicide. Any question out of which an issue can grow must have two sides. If one side is supported by evidence, and the other is not, that side which is unsupported must fail. There is no evidence to support the verdict and judgment in this cause.

The judgment is reversed, with instructions to the trial court to sustain appellant's motion for a new trial.

Robinson, J., dissents.