## SUPREME LODGE KNIGHTS OF PYTHIAS *v.* FOSTER.

[No. 3,401.   Filed March 7, 1901.]

INSURANCE.—*Pleading.—Non est Factum.*—Where a complaint on an insurance policy alleges that defendant executed the policy, and the policy itself shows that it was issued by defendant's board of control, the policy will be held to have been issued by defendant in the name and style in which it was signed, in the absence of a plea of *non est factum. pp. 334-336.*

SAME.—*Fraternal Societies.—Action on Policy.—Complaint.*—In an action on a fraternal insurance policy it is not necessary to allege in the complaint that the insured was in good standing under the laws of the order at the time of his death. . *pp. 336, 337.*

SAME.—*Suicide.—Question of Fact.*—The question of suicide in an action on an insurance policy may be submitted to the jury, although the circumstances attending the death of the insured point strongly to the conclusion that he committed suicide. *pp. 339, 340.*

SAME.—*Warranties.—Use of Intoxicating Liquors.—Habit.*—An application for insurance contained the following questions and answers: "To what extent do you use intoxicating liquors? (State kind and average quantity each day.)" Answer. "Not at all." "Have you always been temperate in their use?" Answer. "Yes." *Held,* that the questions and answers related to the habits of the insured, and that the question of habitual intemperance was for the determination of the jury. *pp. 340-346.*

SAME.—*Suicide.—Instructions.*—In an action on an insurance policy it was not error to instruct the jury that in determining whether the defense of suicide was proved or not it was proper for them to consider the instinctive love of life which ordinarily exists in the human breast, and that men as a rule attempt to preserve their lives. *p. 347.*

EVIDENCE.—*Harmless Error.*—*Trial.*—Overruling an objection to a question which improperly called for the opinion of the witness was harmless where there was proper evidence covering the same matter testified to by the witness, and no evidence to the contrary. *pp. 348, 349.*

SAME.—*Insurance.*—*Suicide.*—Where, in an action on an insurance policy, defendant set up the suicide of insured as a defense, the evidence of the wife of insured, who was the beneficiary, as to statements made by insured upon leaving home was properly admitted as tending to throw light upon the question as to whether the death of the insured was the result of an accident or of his own design. *p. 349.*

From the Floyd Circuit Court. *Affirmed.*

*E. B. Stotsenburg, J. H. Weathers* and *J. K. Owen,* for appellant.

*C. L. Jewett, H. E. Jewett, C. D. Kelso* and *J. V. Kelso,* for appellee.

COMSTOCK, J.—Appellee sued appellant and recovered judgment upon a certificate of membership alleged to have been issued by appellant upon the life of her husband, Frank O. Foster. The certificate of membership is made a part of the complaint.

The first and second specifications of error question the sufficiency of the complaint. The third, the action of the court in overruling appellant's motion for judgment in its favor on the answers of the jury to interrogatories. The fourth, in overruling appellant's motion for a new trial.

Objection to the complaint is made upon two grounds: (1) That while the complaint alleges that the appellant executed the certificate sued upon, the certificate itself shows that it was issued by the board of control of the endowment rank Knights of Pythias. The complaint is as follows: "The said plaintiff, Anna M. Foster, complains of the said defendant, the Supreme Lodge Knights of Pythias, and says that on the 10th day of May, 1897, the said defendant, in consideration of the payment to it of a certain membership fee of $2, together with the payment to it of the sum of $1.60 as first monthly payment and monthly instalment

of annual dues for the month in which the application of Frank O. Foster for membership in the endowment rank hereinafter mentioned was accepted, which sums were paid by said Frank O. Foster, issued and delivered to this plaintiff's husband, the said Frank O. Foster, who was then in full life, but since deceased, its certificate of membership in the endowment rank of the Order of Knights of Pythias, whereby the said defendant promised and agreed to pay this plaintiff the sum of $2,000 out of the endowment fund of the said rank, in accordance with, and under the laws governing the payment of benefits, upon due notice and satisfactory proof of the death of her said husband; that her said husband died on the 2nd day of November, 1898, at the city of Jeffersonville in the county of Clark and State of Indiana; that at the said time said certificate of membership was issued and delivered as aforesaid, she, plaintiff, was, and remained the wife of said Frank O. Foster until his death; that on the — day of November, 1898, this plaintiff furnished the said defendant with proof of the death of said Frank O. Foster, and performed all the conditions of said certificate of membership to be performed by her; plaintiff alleges that the said Frank O. Foster performed all the conditions of the said certificate of membership upon his part to be performed; plaintiff files herewith a copy of said certificate of membership marked A, together with a copy of the application therein referred to, which is by this reference made a part hereof, and plaintiff also files herewith a copy of the constitution, and general laws, rules, and regulations of the said rank marked B, and by this reference thereto made part hereof; plaintiff alleges that the said defendant has not paid said sum, or any part thereof, and that the same is now due and remains wholly unpaid. Wherefore plaintiff demands judgment for $3,000 and all other proper relief."

It will be observed that the complaint alleges that appellant issued the certificate in suit. In the case of the *Su-*

*preme Lodge, etc.,* v. *Edwards,* 15 Ind. App. 524, which was an action against the Supreme Lodge of Knights of Pythias of the World, counsel for appellant insisted, as in the case at bar, that the complaint was bad because the certificate did not upon its face purport to have been issued by the Supreme Lodge of the Knights of Pythias, but rather by the endowment rank of that order, and invoked the familiar principle that where there is a conflict between the complaint and the written contract upon which it is founded, the latter must control. The court held the complaint good, and in the course of the opinion said: "Under the authorities, the express allegations of the complaint that appellant did execute the contract, must be deemed controlling in the absence of a plea of *non est factum.* They are equivalent to an averment that the appellant executed the certificate by the name and style in which it is signed. *Lucas* v. *Baldwin,* 97 Ind. 471; *Napier* v. *Mayhew,* 35 Ind. 276; *Jackson* v. *Burgert,* 28 Ind. 36; *Farley* v. *Harvey,* 14 Ind. 377; *Hunt* v. *Raymond,* 11 Ind. 215; 4 Thomp. Corp., §5037." The identity of the question presented in that case and the case at bar disposes of the first objection made.

The other objection to the complaint is that it contains no averment that at the time of his death Foster was in good standing under the laws of the order. The portions of the certificate pertinent to the question thus presented read as follows: "In consideration of the payment by said member of the prescribed membership fee and of the payments hereafter to said endowment rank of all monthly payments, assessments, and dues as required, and the full compliance with all the conditions herein contained, and with the laws, rules, and regulations governing this rank, now in force, or that may hereafter be enacted by the Supreme Lodge Knights of Pythias, and the rules and regulations which may be adopted by the board of control of said rank, and shall be in good standing under said laws, rules, and regu-

lations, the board of control of the endowment rank Knights of Pythias will pay to Anna M. Foster, his wife, the sum of $2,000 out of the endowment fund of the rank in accordance with and under the laws governing the payment of benefits, upon due notice and satisfactory proof of death, and good standing in the rank at the time of death," etc.

The application for membership is made a part of the certificate. In the application it is agreed that if Foster severed his connection with the order there should be no liability upon the certificate. The fact of the standing of a member of the society is a matter peculiarly within the knowledge of the society. In this respect the rules governing benefit societies and ordinary life insurance policies are substantially the same.

In 1 Boone on Code Pl. §156, it is said: "All that is necessary in the complaint to make out a cause of action upon a policy of life insurance is a statement of the contract, the death of the assured, and the failure to pay as agreed; an allegation that the death of the assured was not caused by the breaking of any of the conditions of the policy is unnecessary, and does not require proof. The plaintiff is not bound to anticipate in the complaint the defense which the defendant may set up, and has a right to rely, in complaining, upon such averments as state a cause of action, leaving matter which would meet a defense for proof, or argument from proof at the trial. When the answer admits the issuing of the policy and the allegations in the complaint, and alleges a breach of its conditions, the burden of proof is upon the defendant, and the plaintiff is entitled to recover unless the defendant satisfies the court or jury, by a preponderance of evidence, that the conditions had been broken." Citing *Murray* v. *New York Life Ins. Co.,* 85 N. Y. 236; 9 Abb. New Cas. 309; *Cahen* v. *Continental Life Ins. Co.,* 69 N. Y. 300; *Jones* v. *Brooklyn Life Ins. Co.,* 61 N. Y. 79; *Van Valkenburg* v. *American, etc., Ins. Co.,* 70 N. Y. 605.

The provision in question was for the benefit of the defendant, and is to be taken advantage of by pleading. *Lounsbury* v. *Protection Ins. Co.,* 8 Conn. 458.

The third specification of error not being discussed is under the rule waived.

The motion for a new trial sets out thirty-three reasons. We will consider only those discussed by appellant's counsel. The fourth, fifth, sixth, and seventh reasons are, respectively, that the damages assessed by the jury are excessive; that the assessment of the amount of recovery is erroneous, being too large; that the verdict of the jury is not sustained by sufficient evidence; that the verdict of the jury is contrary to law. They may properly be considered together.

Appellant filed three special answers in confession and avoidance. Each paragraph admitted the allegations of the complaint, but the first, by way of avoiding liability on the certificate, alleged that in contravention to an express provision of the policy the assured committed suicide, and that there was due upon the policy but $84, which was brought into court for appellee. The second, to avoid liability on the policy, averred that the insured had warranted when the policy was issued to him that he did not use intoxicating liquors at all, and that he had always been temperate in the use of intoxicating liquors, which warranties were untrue, and that there was due by reason of the amount paid by Foster on account of the policy $32.40, which was brought into court for the benefit of the person entitled to receive the same. The third, by way of avoidance, alleged that in contravention of the terms of the policy, the death of Foster was superinduced by the use of intoxicating liquors, and that there was due on the policy but $84.90, which was brought into court for appellee. Issues were joined on the answers by reply in general denial, and by special reply in confession and avoidance, that appellant with knowledge of the intemperate habits of the deceased had accepted premiums and had thereupon waived a forfeiture. This reply

was withdrawn, but was introduced in evidence by appellant. The issues, as tried in the court below, as stated in the brief of appellant were (1) whether or not the assured committed suicide; (2) whether or not the warranties made by the assured as to his use of intoxicating liquors were false; (3) whether or not the death of the assured was superinduced by the use of intoxicating liquors.

The certificate of membership made the application a part of 'the certificate. By the terms of the application it was agreed that "if death shall result by suicide, whether sane or insane, voluntary or involuntary, or if death is caused or superinduced by the use of intoxicating liquors, or by the use of narcotics or opiates, or in consequence of a duel," etc., * * * "then there shall be paid only such a sum in proportion to the whole amount of the certificate as the matured life expectancy at the time of such death is to the entire expectancy at date of acceptance of the application by the board of control; the expectation of life based upon the American experience table of mortality in force at the time of such death to govern", etc.

In support of the fourth, fifth, and sixth reasons for a new trial, counsel for appellant ably argue that the verdict of the jury is not sustained by sufficient evidence. It is admitted that under the issues the burden is upon appellant to show by a preponderance of the evidence that Foster committed suicide, but it is insisted that the evidence shows this fact to the exclusion of every reasonable hypothesis to the contrary.

The evidence is voluminous, and to set out even a summary would unduly extend the length of this opinion. The death of the insured was caused by a pistol shot wound in his right temple. The facts and circumstances attending the death of the insured point strongly to the conclusion that he committed suicide; yet we can not say that the court erred in submitting the question to the jury. In the following cases the question of suicide was involved, and facts were shown

from which it was contended suicide only could have been reasonably inferred, but it was held that the question was properly submitted to the jury.   *Supreme Lodge* v. *Beck,* 36 C. C. A. 467, 94 Fed. 751; *Cochran* v. *Mutual Life Ins. Co.,* 79 Fed. 46; *Sargent* v. *Home Ben. Assn.,* 35 Fed. 711, 18 Ins. L. J. 310; *Ingersoll* v. *Golden Rule,* 47 Fed. 272; *Phillips* v. *Louisiana, etc., Ins. Co.,* 26 La. Ann. 404; *Leman* v. *Manhattan Life Ins. Co.,* 46 La. Ann. 1189, 15 South. 388, 49 Am. St. 348.   See, also, *Travelers Ins. Co.* v. *Neiterhouse,* 11 Ind. App. 155.

Counsel for appellant cite *Bois* v. *Massachusetts, etc., Ins. Co.,* 14 Ins. L. J. 237, and *Agen* v. *Metropolitan Life Ins. Co.* (Wis.), 80 N. W. 1020, cases in which the evidence of the manner of the deaths of the insured was circumstantial, and in which the courts held upon appeal that the circumstances attending the death of the insured were all consistent with the theory of suicide, and inconsistent with any other reasonable theory. It may be said of most of the reported cases that as a rule they are individual cases, and no one of them is sufficient to make a rule.   The argument made in favor of the theory of suicide is able and forceful, but we are of the opinion that the trial court did not err in submitting the question of suicide to the jury.

The defense set up in the second paragraph of answer was that Foster in his application for membership warranted that he did not use intoxicating liquors at all at the time of the application, and that he had always been temperate in the use of intoxicating liquors.

Counsel for appellant claim that the evidence conclusively, and without contradiction, shows that for six or eight years prior to his death he was in the habit of using intoxicants; that he went upon periodical sprees.   The following are the questions and answers referred to:   "To what extent do you now use intoxicating liquors?   (State kind and average quantity each day.)"   "Not at all."   "Have you always been temperate in their use?"   "Yes."

It has been held that such questions relate to habit. Thus, in *Grand Lodge, etc.,* v. *Belcham,* 145 Ill. 308, 33 N. E. 886, the report of the medical examiner attached to the application contains, among others, the following questions and answers: "To what extent does the person use alcoholic stimulants?" A. "None." "To what extent does the person use tobacco?" A. "Moderate." "To what extent does the person use opium?" A. "None." "Are there any indications that would lead you to suppose that the applicant leads or has led other than a sober and temperate life?" A. "None."

In the opinion it is said: "It was claimed by appellants on the trial that the answer of the insured in regard to the use of alcoholic stimulants was false and fraudulent, and hence vitiated the policy; and in this connection they claimed if the insured, at the time the certificate of insurance was issued, used alcoholic stimulants to any extent whatever, such use rendered the statement false.  *  *  * In addition to the ruling on the admission of evidence, the court gave to the jury the following instruction: (3) 'The court instructs the jury that unless you believe, from a preponderance of the evidence, that plaintiff's husband, at the time the policy sued on was issued, was in the habit of using intoxicating liquors to some extent, that then upon the question of the policy having been obtained by false representations, you will find for the plaintiff. And the court instructs the jury that a habit means more than an occasional or incidental use.' The ruling of the court on the admission of evidence, and on the instruction to the jury, is relied upon as error. It is said in the argument of counsel: 'We insist that his answer, "None," as to intoxicants, meant none at all, to no extent whatever.' We do not think this is a correct view of the language used. The language embodied in the application must receive a reasonable construction, one within the contemplation of the parties at the time the contract of insurance was consummated. What was the purpose of requiring the

insured to state in the application to what extent he used alcoholic stimulants, tobacco and opium? But one object can be perceived, and that was to guard against the risk which might arise from insuring the life of one who was in the habit of using the articles, or either of them, to such an extent as to imperil the health and life of the individual. * * * It may be that the language of the question and answer in regard to the use of alcoholic stimulants, if given a strict and technical construction, might be interpreted that the insured did not use alcoholic liquors at all. But, in our opinion, an insurance company propounding a question of that character should not be allowed to indulge in a strict and technical construction; but, on the other hand, the language should receive a fair and reasonable construction, which would imply more than an occasional use. There should be, to some extent at least, a habit or custom. This is the rule established in *Van Valkenburg* v. *American, etc., Ins. Co.,* 70 N. Y. 605, and we think it the correct one."

In *Mutual Life Ins. Co.* v. *Simpson* (Tex. Civ. App.), 28 S. W. 837, the application contained the following questions: "Do you ever drink wine, spirits, or malt liquors? A. No. To what extent. Not at all. Q. Former habits of drinking wine, spirits, or malt liquors? A. Not at all." In the course of the opinion the court said: "The next contention is that the evidence showed a breach of warranty in the statements made by Simpson concerning his former habits as to drinking. The question in terms relates, not to the occasional use of the liquors specified, but to the habitual use of them. The answer, 'not at all', must be interpreted to mean that he had not drunk the liquors habitually. Cook on Life Ins., §36; *Insurance Co.* v. *Foley,* 105 U. S. 350, 26 L. Ed. 1055; *Northwestern Life Ins. Co.* v. *Murkey Bank,* 122 U. S. 501, 7 Sup. Ct. 1221, 30 L. Ed. 1100; *Van Valkenburg* v. *American, etc., Ins. Co.,* 70 N. Y. 605.

But if the answer means that he had never used liquors at all, the warranty would be only as to his habit. *Insurance Co.* v. *Trefz,* 104 U. S. 197, 26 L. Ed. 708.

In May on Insurance (4th ed.), §299, it is said: "A warranty that the insured is of sober and temperate habits means that at the time of insurance, and for such a reasonable time prior thereto as would allow of a man evincing a habit, the insured was a temperate man."

Except in very clear cases the question of habitual intemerance is for the jury.

Cooke on Life Insurance, at §36, says: "Thus a statement by the insured that his habits are temperate is declared not to imply total abstinence, and so a statement that he never uses intoxicating liquors is not falsified by proof of a single or incidental use, the expression having reference to a customary or habitual use."

As to the misrepresentation of the insured of his habits as to the use of intoxicating liquors, counsel for appellant cite *Rainger* v. *Boston, etc., Assn.,* 167 Mass. 109, 44 N. E. 1088; *Mengel* v. *Northwestern, etc., Co.,* 176 Pa. St. 280, 35 Atl. 197; *Union Central Life Ins. Co.* v. *Hallowell,* 20 Ind. App. 150.

In the case first cited, the court said: "The plaintiff does not contend that the insured was not, according to the evidence, in the habit of using intoxicating liquors to excess, but seeks to avoid the effect of the evidence on the ground that it was not shown that he actually or knowingly intended to deceive by the statement which he made in regard to his using intoxicating liquor, or that the defendant's risk was thereby increased." The statement referred to was the answer to the following question: "Do you use ardent spirits, wine, or malt liquor? If so, to what extent,— average quantity each day? A. Glass of beer once in a day or two." The court held that the trial court properly directed a judgment in favor of the defendant.

In *Mengel* v. *Northwestern, etc., Co., supra,* the insured

to the question, "Have you always been temperate?" Answered "Yes." "The incontrovertible proof" quoting from the opinion "was that he had been very frequently drunk, and at least six times in the preceding five years had required the services of a physician from that cause. He died in four months after the policy was taken out, and by plaintiff's own showing in the proofs of death, the remote cause of death was intemperance, and the immediate cause delerium tremens." The court held that the admitted facts showed such a breach of a material warranty that there could be no recovery.

In the third case cited, this court held that warranties in an application of insurance must be literally true whether material or immaterial. These opinions are not inconsistent with the cases heretofore cited.

Upon the habits of the insured the evidence is as follows: William Ciscoe testified that he had been acquainted with the deceased for five years before his death, saw him quite frequently for four years, saw him two or three times a week anyhow; don't know that he was in the habit of getting intoxicated at all; always saw him sober, except within a few weeks before his death; within that time saw him drink intoxicating liquors two or three times. William Hasson testified that he had known the insured ten years; that he had in that time seen him drink, sometimes beer, sometimes whisky, and had seen him intoxicated frequently. Upon cross-examination the witness testified that during the five years last preceding his death, the years of his married life, he rarely saw the insured, and had but once seen him under the influence of liquor, and this was the week preceding his death. The witness said he seemed to be under the influence of liquor; that he never saw him more intoxicated than he was on that occasion. William Ciscoe, who was present with Foster on the occasion referred to by Hasson, testified that in his opinion Foster was not under the influence of liquor to any extent. Charles Bert testi-

fied that he saw Foster intoxicated twice, once about five months before his death, and once about four or five years ago. Anna M. Foster, appellee, testified that her husband was not drinking at the time he applied for insurance; that she had known him six and one-half years, and had never seen him intoxicated; that after their marriage she had seen him drink a glass of beer not more than once or twice a week.

Appellant introduced in evidence reply in confession and avoidance of appellee which had been withdrawn, to the effect that appellant with knowledge of the intemperate habits of the deceased had accepted premiums from the insured. This reply was subject to explanation. *Cleveland, etc., R. Co.* v. *Gray,* 148 Ind. 266.

Chales D. Kelso testified in reference thereto that as an attorney for appellee he filed the complaint and had charge of making up the issues in the cause, and as a precaution, without consultation with the appellee, he prepared and filed the reply read in evidence. The evidence does not show how recently prior to the taking out of the insurance the deceased was addicted to the use of intoxicating liquors. Instances of his use of liquors and of his intoxication subsequent to that date could have but little weight in determining the question of his prior habits. The policy had been in force nineteen months when the insured died. The jury had the benefit of all these facts in reaching a conclusion. We are of the opinion that these questions must be held to relate to the habits of the insured.

It is claimed that instruction number three given by the court of its own motion is erroneous. The instruction is as follows: "One of the questions of fact which is submitted for your determination is was the answer 'Not at all' made by Frank O. Foster on the 3rd day of May, 1897, in his application for insurance in answer to the question 'To what extent do you use intoxicating liquors?' a true or false answer. The burden of proof is on the defendant to estab-

lish by a fair preponderance of the evidence that the answer to the question was untrue. The evidence before you respecting the habit of Foster of using intoxicating liquors prior to the date of the application is to be considered for the purpose of enabling you to determine whether at that date Foster used intoxicating liquor, and it is for you to say what bearing such evidence may have in relation to that inquiry."

The objection made to the instruction is that it is misleading, because it would lead the jury to believe that if Foster did not use intoxicating liquors on the particular day on which the application was made that the answer that Foster made was not false. In our opinion the objection is not well taken.

Instruction number five given to the jury at the request of appellee is claimed to be bad because it gives the jury to understand that if any witness has deliberately and knowingly testified falsely to a material fact that the jury can disregard all the testimony of such witness. It is insisted that if a witness has testified falsely to a material fact, the jury has not the right to disregard all the testimony of such witness if the other testimony of the witness is corroborated by other creditable witnesses, or by facts and circumstances proved on the trial, then the jury has no right to disregard the whole testimony of such witness.

In the eighth instruction given by the court of its own motion, the jury were told: "In determining the questions of fact in this case you should take into consideration the entire evidence introduced by the respective parties, but you are at liberty to disregard the statements of all such witnesses, if any there be, as have been successfully impeached, either by direct contradiction, or by proof of having made contradictory statements at other times, or by proof of general bad reputation except in so far as such witnesses have been corroborated by other creditable evidence, or by facts or circumstances proved on the trial." Considered in con-

nection with instruction eight, the jury could not have been misled by said instruction number five.

The third instruction given at the request of appellee is claimed to be erroneous, because it instructed the jury that in determining whether the defense of suicide was proved or not it was proper for them to consider the instinctive love of life which ordinarily exists in the human breast, and that men as a rule attempt to preserve their lives. In support of this objection, *Sovereign Camp, etc., v. Haller,* 24 Ind. App. 108, and *Whitsett* v. *Chicago, etc., R. Co.,* 67 Iowa 150, 25 N. W. 104, are cited. In the *Sovereign Camp of Woodmen, etc., v. Haller, supra,* no question arose upon the giving or refusal of instructions. *Whitsett* v. *Chicago, etc., R. Co., supra,* is cited. The last named case was for personal injury. The jury were told that they should consider and give proper weight to the instincts and presumptions which naturally lead men to avoid injury and preserve their own lives, in determining whether plaintiff at the time of the accident was in the exercise of ordinary care. The court held the instruction erroneous upon the ground that when the facts of the transaction are proved by direct testimony the question whether the party acted negligently or with care is to be determined from those facts. The plaintiff testified that he in the night-time, and when the train was in motion, jumped, or stepped, from the top of a box car into a narrow space between the end of the coal chute and the side of the tender, and the question was whether this was a negligent or a careful act. The court said: "It is manifest that the consideration that men do not ordinarily expose themselves to dangers or death can have no weight in determining that question." The instruction is supported by *Travelers Ins. Co.* v. *McConkey,* 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; *Connecticut, etc., Ins. Co.* v. *McWhirter,* 73 Fed. 444, 19 C. C. A. 519.

The refusal to give instruction number six requested by appellant was excepted to. It is as follows: "I instruct you

that as a general rule as laid down by the medical authorities a person generally commits suicide when he is either insane or despondent; that for the purpose of performing the act such person selects a room by himself or some isolated spot; and if death is produced by a pistol that the discharge is more frequently made in the temple, the heart, the eyes, or the mouth. It is also true that when the wound is inflicted by holding the pistol in immediate or close proximity to the point where the wound is inflicted, that there will be more or less laceration of the wound. If the pistol is held some distance away from the point where the wound is inflicted, there will be no laceration of the wound. If the pistol is held within arm's length of the point where the wound is inflicted, there will be more or less powder burns around the wound, the quantity visible depending on whether the pistol is held so close to the point where the wound is to be inflicted as to cause the unconsumed powder to be forced into the wound with the projectile or at some little distance so as to permit the grains of unconsumed powder to spread and be projected into the parts around the wound."

The statement that it is laid down in the medical authorities that "a person generally commits suicide when he is either insane or despondent" is not warranted. The rule may be, that persons who commit suicide are either insane or despondent, but that is not the language of this instruction. The jury were informed of all the facts and circumstances attending the death of the insured, and it was not error to refuse this instruction.

The appellee while testifying as a witness was asked the following question: "How was your married life as to being happy or unhappy?" She answered: "Very happy." A motion to strike out the answer was sustained, and the court instructed the witness to state the facts. Attorney for appellee then addressing the witness said: "That is exactly what I want, the facts about your married life, the relations

you bore to each other as to being pleasant, happy, agreeable, and peaceful, or otherwise." Counsel for appellant objected to the question upon the ground that it called for an opinion, and not the statement of a fact. The objection was overruled, and the witness answered: "We were always most happy together; we got along very well; we never had any difficulties", etc. Appellant then moved to strike out the answer upon the ground that it gave an opinion and conclusion. The motion was overruled. This action of the court is made a reason for a new trial. There was other evidence that the relations between the husband and wife were pleasant, and there was no evidence to the contrary; and even if the question was improperly admitted, it could not have harmed appellant.

It is also claimed that it was error to permit this witness to answer the following question: "What did he tell you with reference to his whereabouts and what he expected to do?" To which the witness answered: "He told me not to concern myself about him if he did not return, if he did not come to Louisville when we moved to Louisville. He said he was going to Louisville and Jeffersonville to get all these letters that he wanted to take with him, and that he would see me on Wednesday morning before he started to Washington." The witness and her husband had arranged to move to Louisville, Kentucky, on Tuesday; on the afternoon of the day before, Monday, the deceased left home with the expressed intention of going to Jeffersonville, Louisville and Indianapolis, and thence to Washington with letters indorsing him for the office of assistant quartermaster, for which position he intended to apply. The witness did not see him alive after that morning. The objection made is that it called for a declaration made by the insured out of the presence of appellant's officers or agents, and was no part of the *res gestae*. The evidence was proper to show his purpose in leaving home and as tending to throw light upon the question as to whether the death of the insured was the result of accident, or of his own design.

We find no error in the record for which the judgment of the trial court should be reversed. We deem it proper to add that the jury were instructed at length with particularity and fairness upon all the issues. Judgment affirmed.