SUPREME TENT KNIGHTS OF MACCABEES OF THE WORLD

*v.*

MINNIE M. STENSLAND *et al.*

*Opinion filed December 16, 1903.*

1. EVIDENCE—*physician may give an opinion as to whether death was caused by strangulation.* A physician called as an expert by plaintiff in an action on a benefit certificate may give his opinion as to whether, under the facts in evidence, the death of the insured was caused by strangulation, where he has seen several cases of hanging or has read upon the question in medical works.

2. INSURANCE—*when insured may contradict sworn proofs of death.* A beneficiary who signed, without reading, sworn proofs of death prepared by the company's agent, may introduce such proofs in evidence upon the question of notice, and, if no element of estoppel is present, may, after proper notice, give evidence contradicting the statement in such proofs that death was by suicide.

3. ESTOPPEL—*elements essential to equitable estoppel.* It is essential to equitable estoppel that one party has, by his conduct, willfully misrepresented a material fact with the intention of inducing the action of another person who, relying upon such representations in ignorance of their falsity, has so changed his position that he would suffer loss if the false conduct were repudiated.

4. SAME—*what does not give rise to equitable estoppel.* Negligence by the widow of the insured in omitting to read proofs of death prepared by the company's agent, before signing them, does not raise an equitable estoppel, so as to preclude her from contradicting a statement in such proofs respecting cause of death.

5. BURDEN OF PROOF—*when burden of proving suicide is upon the company.* If the defendant benefit society files a special plea alleging that the insured committed suicide, in violation of the terms of the benefit certificate, the defendant has the burden of establishing such fact, notwithstanding the proofs of death introduced in evidence by the plaintiff contain an admission to that effect, making a *prima facie* case of suicide, which the plaintiff seeks to overcome by introducing contradictory evidence.

*Supreme Tent K. O. T. M.* v. *Stensland,* 105 Ill. App. 267, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

H. H. C. MILLER, and W. S. OPPENHEIM, for appellant.

BEACH & BEACH, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was an action in assumpsit brought by appellees, against appellant, in the circuit court of Cook county.

The appellant issued a benefit certificate to Peter A. Stensland on March 25, 1895. At that time the by-laws of appellant provided that if the insured committed suicide, whether he was sane or insane at the time, no benefit should be paid. In 1897 this by-law was changed by extending the time to five years, so that in case of suicide within five years the insurer should be liable only for the amount of all assessments paid. Peter Stensland was found dead at his home on April 2, 1898. His neck was suspended about six inches above the floor by a rope attached to the door-knob. His chest, hips and legs were resting upon the floor. At the time of his death Stensland's family was away from home. A man by the name of Bense occupied a room in the flat with the Stenslands, and it was he who notified the police of Stensland's death. The coroner's inquest returned a verdict of "suicide by strangulation," and the proofs of death sent in by appellees stated that the remote cause of death was suicide by strangulation. Appellant refused to pay anything more than the amount of the premium it had received, and this suit was brought upon the certificate.

Appellant interposed a plea of general issue, and a further special plea alleging that the deceased committed suicide. On the trial appellees showed the death of the insured, and introduced the certificate and proofs of death. The appellant then offered the by-laws which were in force when the certificate was issued and when the deceased died. The appellees put in testimony tending to show that the deceased did not commit suicide, and appellant introduced a rebuttal tending to show that he did commit suicide. The jury brought in a general verdict for the plaintiffs (appellees) and assessed their

damages at $2000, and also found specially that the deceased did not come to his death by committing suicide with suicidal intent. From a judgment on the general verdict an appeal was taken to the Appellate Court for the First District, where the judgment was affirmed. This case comes here by a further appeal from that judgment.

The first point made by appellant is, that the court erred in not giving the peremptory instruction offered by the defendant after the introduction of all the evidence. The affirmance of this judgment by the Appellate Court leaves this court with only the bare legal question, was there evidence fairly tending to show the plaintiffs' cause of action? We must hold that there was. We can not disregard the testimony of the three physicians who swear that in case of strangulation the face is distorted and discolored, and there would be marks on the neck at the point of the constricting material, due to the escape of blood from the blood vessels into the tissues. This expert evidence; coupled with the testimony of several witnesses to the effect that there were no marks whatever on the neck, all went to support the plaintiffs' case. A paper was found on the table by the officers. It was in the handwriting of the deceased, partly in Norwegian and partly in English, and as translated is: "If you come while I live then then me till hospital," and below this the word "house." We think this is additional evidence tending to show that there was no suicidal intent, for it is unusual for one contemplating self-destruction to provide for the contingency of some one coming while he lives. The following word, "hospital," indicates serious illness at the time the note was written. This is further corroborated by the generally disjointed and incoherent nature of the note. There was also testimony that the deceased had two weeks previously fallen five stories in an elevator. The widow testified that she kept the clothes line hanging on the door in loops, and no one swears that the rope was tied around the neck of the

deceased.   Upon all this evidence we believe that reasonable minds might come to a different conclusion on the question of suicide.

The next point reviewed by counsel for appellant is, that the hypothetical question propounded to Dr. Reed was inadmissible.   The question, after stating the circumstances, concluded with the words: "In your opinion, doctor, could the death of this man have been caused by strangulation with suicidal intent?"   The counsel for the appellant questioned the last two words, "suicidal intent," and the court ordered that these two words be stricken.   In their argument counsel for the appellant,— for the purpose of fairness, they say,—quote this portion of the evidence, but they omit altogether the court's order to strike those words, and attribute to the court certain words spoken, as the record shows, by counsel.   It was either careless or reprehensible to misquote the judge's words at this time, for it changes the entire complexion of the question.   We are convinced that the record shows no error in allowing the question as modified by the court.

The contention that the physicians were not experts on the question of strangulation is likewise without merit.   The question before these experts was whether, in case of strangulation, there was any discoloration of the skin or distortion of the features.   Dr. Reed had seen several instances where persons had died from hanging. Dr. McNamara, the attending surgeon and medical director of the Cook County Hospital, had seen sixteen or seventeen men hung and had made several post-mortem examinations of people who had died of strangulation. Dr. Craig's testimony agreed with that of the others, and he states that he had read on this question in Taylor on Medical Jurisprudence.   The contention is, that although these doctors may know the condition of the face or body in cases of ordinary strangulation or hanging, they are not experts in cases of strangulation where part of the body was suspended and a part resting on the floor.

This objection is frivolous. The phenomena connected with strangulation are not so technical as to require a specialist on the subject. Of course, a physician, just because he is a physician, is not necessarily an expert witness on matters that involve difficult questions of chemistry or bacteriology; but we think of no better expert witness, in a case like that under consideration, than a physician who has seen a number of cases of strangulation, whether the persons strangled had their feet on the floor or not.

Plaintiffs, on the trial, introduced the sworn proofs of death which were filed with the defendant, but limited the offer to the purpose of showing appellant received notice of the death of the insured. The proofs were signed by Minnie M. Stensland, the widow, and Christ. Runden, guardian of the minor beneficiary. In this proof it was stated that the remote cause of death was "suicide by strangulation." The plaintiffs were then permitted by the court to introduce evidence contradicting the sworn statement made in this proof of death, that the remote cause of death was suicide by strangulation. It is contended by appellant that the sworn admissions as to the cause of death in the proofs of death were binding, and could not properly be contradicted unless the plaintiffs could show that the statements were made by mistake or obtained by means of fraud. The trial was begun October 8, 1901. On September 26, 1901, appellees gave appellant written notice that if the written proof of death assigned suicide by any means as the cause of death of the insured, appellees would, on the trial, offer evidence that such proof of death was in that particular erroneous and untrue and made under misapprehension and in ignorance of the facts, and would show that the insured did not come to his death by suicide. In *Ætna Ins. Co.* v. *Stevens*, 48 Ill. 31, this court held that in a suit on a fire insurance policy the failure of the insured to include certain articles in the proof of loss did not estop

him from subsequently showing on the trial that these other articles were destroyed, if he satisfied the jury that the omission was from no design or bad purpose. In *Modern Woodmen of America* v. *Davis*, 184 Ill. 236, the court says: "Any statement contained in the notice and proofs of death was available to the order as evidence in the nature of admissions made by the plaintiff in the action, but we find nothing in the averments of the plea upon which to base the contention an estoppel arose. That the statement in the proof of loss was made with the intention the order would act upon it, and that the order did act upon it and changed its position to its injury, was at least essential to the creation of an estoppel."

While there may be some slight authority for the contention of appellant, we are convinced that reason and the great weight of authority are with the rule which permits the statements in the proof of loss to be contradicted on the trial, unless it appears that the usual elements of equitable estoppel are present. The rule insisted upon by appellant is, that before the statements in the proof of loss can be contradicted the plaintiffs must show that they were made by mistake or produced by fraud. The evidence shows that the plaintiffs knew nothing as to the cause of the death. The widow was away from home at the time, and, of course, was no more able to state the cause of death, as a fact, to be suicide, than were the agents of appellant. She swears that the agent of the insurance company prepared the proof of loss and that she did not read it before she signed it. It was attempted, also, on the trial to show the circumstances under which she signed, but this was objected to by counsel for appellant. It may be admitted that the widow was negligent in not reading the proof of loss before signing it, but such negligence is by no means reason for applying the doctrine of equitable estoppel. But even granting that she knew and comprehended, at the time, that the proof of death contained the statement that the death

was from suicide, still no estoppel arises, for the reason that the statement that the death resulted from suicide by strangulation was a mere opinion. Moreover, it is not shown that appellant, relying upon her statement, has changed its position or condition in any respect. Before the doctrine of equitable estoppel can apply, it must appear that a party has, by his conduct, willfully made false representations of material facts for the purpose of inducing another person to act upon them, and that the other, not knowing that the representations were false, has, because of his reliance upon the conduct, so altered his position that he would suffer a loss if the court should permit the false conduct to be repudiated. These essentials are not present in this case. Taking the view most favorable to the appellant, the record shows no more than this: that the widow, with no intention to defraud or mislead, signed and swore to a proof of death in which the statement was made that the remote cause of death was suicide by strangulation, and then, on the trial, introduced testimony tending to show that the death was not caused by suicide. That is the entire matter as shown by the record. There is no evidence that the appellant has relied upon that statement, nor that it is in a worse condition, because of anything stated as to the cause of death, than if the statement had not been made. The closest scrutiny of her entire conduct fails to disclose a single act which could be looked upon as a reason for excluding evidence as to the real cause of death. If there was any fraud whatever in the transaction at the time she signed the proof of death, she certainly was not the perpetrator.

The insured died April 2, 1898. Proof of death was made August 20, 1898. This suit was begun in December, 1898. June 22, 1900, appellant filed a special plea setting up that the insured committed suicide, in violation of his contract. On October 5, 1900, appellees filed a replication denying that the insured committed suicide. There

have been two jury trials. The first was had December 14, 1900. It will thus be seen that more than two months before any trial of the cause was had or entered upon, appellant was fully notified and apprised, by the pleadings, that it could not rely on the admissions contained in the proof of death, and before the trial resulting in the present judgment a special notice in writing was given by appellees to appellant that the question of suicide would be controverted. We accordingly think that there was no error in permitting the plaintiffs to introduce testimony tending to show that the cause of death was not suicide. *Parmalee* v. *Hoffman Fire Ins. Co.* 54 N. Y. 193; *Supreme Lodge K. of P.* v. *Beck*, 181 U. S. 49; *Leman* v. *Manhatten Ins. Co.* 46 La. Ann. 1189; 24 L. R. A. 589; *Walther* v. *Mutual Life Ins. Co.* 65 Cal. 417; *Home Benefit Ass.* v. *Sargent*, 42 U. S. 691; *Keels* v. *Mutual Ins. Co.* 29 Fed. Rep. 198. See especially note to *John Hancock Mutual Life Ins. Co.* v. *Dick*, 117 Mich. 518, in 44 L. R. A. 846.

The final contention of appellant is, that the court erred in refusing to instruct the jury that the beneficiaries could not recover unless they showed, by a preponderance of the evidence, that deceased did not commit suicide. Under the pleadings we think there was no error in refusing to give this instruction. The defendant filed a special plea, in which it averred "that on April 2, 1898, said Peter A. Stensland committed suicide, in violation of the terms of the benefit certificate," etc. By this plea it asserted the affirmative of the proposition, and the burden of proof was upon it throughout the trial, and did not shift. The proof of death had no effect whatever in shifting the burden of proof. It was nothing more than evidence which, standing alone, might be considered *prima facie*. It was introduced by appellees, and the duty devolved upon them to offer sufficient evidence then to overcome the *prima facie* case made by the admission, but this did not affect the burden of proof. It was but evidence that could be considered, for the benefit of

appellant, upon the proposition, which it asserted, that the insured came to his death by suicide, and upon which appellant was bound to make the burden of proof. In *Egbers* v. *Egbers*, 177 Ill. 82, we said (p. 88): "The term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a *prima facie* case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails. This burden of proof never shifts during the course of a trial, but remains with him to the end." The case of *Fidelity and Casualty Co.* v. *Weise*, 182 Ill. 496, cited by appellant, is not in conflict with these views. That was an action upon an accident policy. The only right to recover was upon showing that the death of the insured was accidental, and it was said in that case that the burden was upon the plaintiff to show that the death was not due to suicide. The case at bar, however, is upon a life.policy. The issuing of the policy and the making of all of the payments by the insured under it were admitted. The insurer insists that the policy was avoided by a breach of its conditions, and upon that proposition the burden was upon the insurer. *Spencer* v. *Citizens' Mutual Ins. Co.* 142 N. Y. 505; *Supreme Lodge* v. *Foster*, 26 Ind. App. 333; *John Hancock Mutual Ins. Co.* v. *Moore*, 34 Mich. 41; *Home Benefit Ass.* v. *Sargent*, 144 U. S. 691.

We think there is no reversible error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*